[File No. Cr. 212]

STATE EX REL. NELS G. JOHNSON, Attorney General, Relator, v. HAROLD P. THOMSON, Judge of the District Court, Wallace E. Warner, State's Attorney of Walsh County, Leonard Maresch, and Wm. T. DePuy, Attorney for Leonard Maresch, Respondents.

(34 NW2d 80)

Opinion filed January 22, 1948.   Rehearing denied September 29, 1948.

*Nels G. Johnson,* Attorney General, *P. O. Sathre, C. E. Brace* and *Richard F. Rausch,* Assistant Attorneys General, for relator.

*Wallace E. Warner,* States Attorney, *Wm. DePuy* and *George F. Shafer,* for respondents.

CHRISTIANSON, Ch. J. The Attorney General of North Dakota has applied to this court for a supervisory writ to review the action of the Honorable Harold P. Thomson, one of the judges of the Second Judicial District in this state, in presiding as trial judge in a certain criminal action in the District Court of Walsh County against one Leonard Maresch, and in pronouncing sentence and rendering judgment in said criminal action.

The said Leonard Maresch was charged with the commission of the crime of murder in the first degree and was held to answer in the District Court of Walsh County. The Honorable C. W. Buttz, one of the judges of the Second Judicial District, was the presiding judge at the term of the District Court at which the action was about to be tried. On March 26, 1945, the said Leonard Maresch filed what is commonly known as an affidavit of prejudice against said Judge Buttz under the provisions of NDRC 1943, Section 29–1519. Thereafter, such proceedings were had pursuant to law that on March 27, 1945, an order was entered by the Supreme Court of North Dakota appointing and designating the Honorable P. G. Swenson, one of the judges of the First Judicial District, as presiding judge in said criminal action. The action came on for trial in April 1945 before a jury and resulted in a verdict finding the defendant. guilty of murder in the first degree. The defendant appealed from the judgment of conviction and the Supreme Court reversed the judgment of conviction for errors occurring at the trial and remanded the case for a new trial. State v. Maresch, 75 ND 229, 27 NW2d 1. The action appeared upon the calendar of a term of the District Court of Walsh County called to con-

vene July 7, 1947. The Honorable C. W. Buttz, the judge against whom the defendant had filed an affidavit of prejudice in the first instance, was the presiding judge at such term. Some question having arisen between counsel for the respective parties as to what judge was authorized to preside upon the retrial of the said criminal action, the Attorney General and the State's Attorney of Walsh County duly presented an application to the Supreme Court asking that such Court, (under its power of general superintending control over inferior courts, N. Dak. Const., Sec. 86), determine whether the order formerly entered by said Supreme Court designating Honorable P. G. Swenson as trial judge in said criminal action remained in force and if not in force, that the Supreme Court designate a judge to act as trial judge in said action. Such application came on for hearing pursuant to notice. Upon the hearing the Attorney General and the State's Attorney of Walsh County appeared for the state, and the defendant, Leonard Maresch, appeared by his counsel and filed a written return wherein he objected to the said Honorable P. G. Swenson continuing to act as presiding judge upon the trial of said action and asked that the Supreme Court designate some district judge other than the said Judge Swenson to act as trial judge. Before such application was determined, indeed before it was fully submitted, Judge Swenson submitted to and filed with the Supreme Court a written statement to the effect that because of illness it would be impossible for him to preside upon the trial of the said criminal action at the term appointed to convene on July 7, 1947, and, therefore, he asked that he be relieved of the duty of acting as judge in such case. It then appeared to the satisfaction of the Supreme Court that in order that said criminal action might be tried expeditiously, it would be necessary in any event that some judge other than the said Judge Swenson be designated as trial judge in said criminal action. Accordingly, on June 20, 1947, an order was made relieving said Hon. P. G. Swenson from all duties as presiding judge in said criminal action and further ordering that the Hon. W. H. Hutchinson, one of the judges of the Third Judicial District, be designated and appointed as

judge to preside upon the trial of said criminal action in the District Court of Walsh County, North Dakota, and to do and perform all acts authorized by our laws to be performed by the presiding judge upon the trial and determination of said action.

Judge Hutchinson entered upon the discharge of his duties as presiding judge in said criminal action. In the afternoon of July 8, 1947, he presided at a session of the District Court of Walsh County held in the Court Rooms of said Court in the Court House in Walsh County. At such session he called the case of the State of North Dakota against Leonard Maresch. The Hon. Nels G. Johnson, Attorney General of the State of North Dakota, and Wallace E. Warner, State's Attorney of Walsh County, were present in court and appeared as attorneys for the State of North Dakota and the defendant, Leonard Maresch, was present in person and represented by his attorney, Wm. T. DePuy. Defendant's attorney DePuy made certain preliminary motions, among others, one that provision be made for the appointment by the Court of additional counsel for the defendant, Leonard Maresch, the compensation of such counsel to be paid by the county; and another, that certain witnesses for the defendant be subpoenaed from without the state and that the expense incident to the appearance of such witnesses be paid by the county. Judge Hutchinson ruled upon and decided such motions. Thereupon during such session of the court, consideration was given to the time when the said criminal case should be brought on for trial. Counsel for both parties participated in such discussion and were heard with respect thereto, and thereupon the said Judge Hutchinson, as presiding judge, ordered that the trial of said cause be continued until July 29, 1947. At the hour appointed for reconvening court on July 29, 1947, the court was opened pursuant to adjournment with the Hon. W. H. Hutchinson, judge, presiding. The state appeared by Wallace E. Warner, State's Attorney for Walsh County, and the defendant appeared in person and by his attorney, Wm. T. DePuy. At that time it was agreed by the parties and their attorneys and by the court that the case be set for trial on November 4, 1947, at 10 o'clock in the

forenoon of that day; and the said W. H. Hutchinson as presiding judge thereupon directed the entry of an order that the court be adjourned to reconvene on November 4, 1947, at 10 o'clock A. M. and that said criminal case come on for trial at that time. On October 4, 1947, the said Judge Hutchinson made an order summoning a petit jury and that 100 qualified persons be summoned as jurors to report at the Court Rooms of said court in the Court House in Walsh County on November 4, 1947, at 10 o'clock A. M. of that day.

On October 31, 1947, certain proceedings were had in the District Court of Walsh County, in the case of the State of North Dakota v. Leonard Maresch before the Hon. Harold P. Thomson, one of the judges of the Second Judicial District, presiding. At that time Leonard Maresch the defendant in said criminal action appeared in court with his attorney, Wm. T. DePuy, and the Hon. Wallace E. Warner, the State's Attorney of Walsh County, appeared as attorney for the prosecution. Defendant's counsel then said: "If it please the Court, the defendant has been informed against with the crime of Murder in the First Degree, a plea of not guilty has been entered. As the Court knows there has been a trial, a conviction and a reversal with a new trial set to commence next Tuesday. The defendant is here and here and now he offers to enter a plea of guilty to the offense of Manslaughter in the Second Degree, which I apprehend is included in the Information on file in and with this Court. I presume in order to accept a plea of that sort to that offense it would be necessary for the State to recommend to the Court that such plea be accepted." Following this the State's Attorney, Warner, said: "Let me say at the outset for the sake of the record that the Attorney General of the State of North Dakota, Honorable Nels G. Johnson, is opposed personally to the allowance of this plea and that by my taking this plea I am taking it upon my own responsibility and against the recommendations and the opinion of the Attorney General of the State of North Dakota. However, your Honor, I as State's Attorney feel accepting it on behalf of the State in the case that it is advisable, that it is expedient to take

this plea . . . ". (The State's Attorney then states certain reasons for his belief that the plea should be accepted.) Judge Thomson thereupon stated: "Mr. Maresch, will you please stand up. Is it your desire that you be permitted to enter a plea of guilty to the charge of Manslaughter in the Second Degree in this case now pending against you here in Walsh County?" The defendant answered the question in the affirmative. Thereafter, the said Leonard Maresch, as defendant in said criminal action, entered a plea of guilty to the crime of Manslaughter in the Second Degree. Judge Thomson thereupon pronounced sentence, and judgment of conviction was rendered and entered, that the said Leonard Maresch be committed to the State's Penitentiary for a term of five years.

It is shown that the State's Attorney of Walsh County requested the Attorney General to assist in the prosecution of the criminal action against Maresch, and that in compliance with such request the Attorney General in performance of his official duties (NDRC 1943, Sec. 54–1201, 1, 5), took an active part in the prosecution of the action from the very beginning. He took part in the trial of the action in the District Court. He participated in the proceedings had after such trial and on the appeal to the Supreme Court he filed a brief and argued the case orally before the court. He continued to take an active part in the proceedings had following the remand of the case and he had arranged to be present at and participate in the retrial of the case. The Attorney General was not present and did not participate in the proceedings had before Judge Thomson on October 31, 1947. After being informed of such proceedings he applied to this Court for a supervisory writ to review the action of the said Judge Thomson in presiding as judge of the District Court at the proceedings then had in the case of State of North Dakota against Leonard Maresch and in pronouncing sentence and rendering judgment in said case. The Attorney General contends that such action by Judge Thomson was unauthorized and is null and void; that the only judge authorized and qualified to perform any judicial act in said case was the judge appointed and designated by the order of the Supreme Court,

namely the Honorable W. H. Hutchinson and that he and he alone had authority to act as judge in said action.

Logically, the first question which presents itself for consideration and determination is, what is the scope and effect of an appointment and designation by the Supreme Court of a substitute judge in an action in which an affidavit of prejudice has been filed against the presiding judge? The answer to the question involves a construction of the laws providing for such appointment and designation.

The laws of this state have always provided that one accused of crime may disqualify a judge of the District Court from acting in a criminal case by such accused filing an affidavit that he can not have an impartial trial by reason of the bias or prejudice of the presiding judge in the District Court where the action is pending and is about to be tried. Indeed such provision was made in the first code enacted by the Legislative Assembly of the Territory of Dakota. See Section 285, Code of Criminal Procedure, Revised Codes Dakota, 1877. This section remained in force as enacted and became a part of the laws of the State of North Dakota upon the establishment of the state government. North Dakota Constitution, Schedule, Section 2; Compiled Laws of Dakota 1887, Section 7312. C. L. 1913, Section 10766. Under such statutory provisions the right to a change of judges was absolute upon the timely filing of the statutory affidavit. State v. Kent, 4 ND 577, 593, 62 NW 631, 27 LRA 686; State v. Boyd, 26 ND 224, 144 NW 232. But under such provisions the judge against whom an affidavit of prejudice was filed was authorized to call any other judge of a District Court to preside at the trial of the action. This continued to be the law of this state until 1921. In that year the legislature changed the law and specifically provided that upon the filing of an affidavit of prejudice by the defendant in a criminal action, the district judge against whom such affidavit is filed "shall proceed no further in the action and shall thereupon be disqualified to do any further act in said cause," and that the Supreme Court shall "designate a district judge to act in the place and stead of the judge disqualified." Laws 1921, Chapter 129, Section 1, 4. The

provisions of the law then enacted have been continued in force without material change and as embodied in the North Dakota Revised Codes of 1943,.read as follows:

"29–1513. *Prejudice or Bias of Judge; Affidavit; Filing.* When either party to a criminal action pending in any of the district courts of this state shall file an affidavit stating that he has reason to believe and does believe that he cannot have a fair and impartial trial or hearing before the judge presiding at the term of court at which such action is to be tried, by reason of the bias and prejudice of such judge, the judge shall proceed no further in the action and thereupon shall be disqualified to do any further act in the cause. Such affidavit may be made by the defendant or by his attorney on his behalf, and it may be made on behalf of the state by the attorney for the state. Such affidavit must be filed at least five days before the opening of the term if the information has been filed. If the information is filed in term time, the affidavit may be filed at any time before trial.

"29–1514. *Affidavit of Prejudice to be Filed.* An affidavit of prejudice with two copies thereof shall be filed with the clerk of the court in which the action is pending. Upon the filing of such affidavit, the clerk shall give notice immediately to the judge who is disqualified by delivering to him a copy of such affidavit. Another copy thereof shall be forwarded promptly to the clerk of the supreme court.

"29–1515. *The Supreme Court to Designate Trial Judge.* Upon receipt of an affidavit of prejudice from the clerk of the district court of any county in this state, the supreme court shall designate a district judge to act in the place and stead of the judge disqualified.

"29–1516. *Judge Designated to Conduct Trial Forthwith; Notice to Parties.* Any judge of the district court designated by the supreme court to act in a cause to which he has been assigned, as soon as possible after receiving such notice from the supreme court and during the same term unless agreement to the contrary is made by the parties, shall proceed.with the trial

of said cause, first giving to the parties or their attorneys reasonable notice of the date of trial.

"29–1517. *Expenses of Judge Designated.* The actual expenses of a judge designated to try a cause in which an affidavit of prejudice has been filed, upon furnishing a voucher therefor to the state auditor, shall be approved for payment and paid by the state treasurer out of the general fund.

"29–1518. *Jurors Not to be Excused by Disqualified Judge.* After an affidavit of prejudice has been filed with the clerk of the district court, no juror shall be excused except by the judge designated for good cause shown."

It will be noted that the legislative enactment of 1921 made a complete change in the method of selecting and designating a substitute judge to act in the place of a district judge against whom an affidavit of prejudice has been filed. Under the law as it existed prior to such enactment the jurisdiction of the proceeding for such selection and designation was vested in the district court and the judge against whom the affidavit of prejudice had been filed was authorized and required to make such designation. This method was wholly abrogated by the 1921 legislative enactment. By this enactment the legislature not only deprived the judge against whom an affidavit of prejudice had been filed of authority to make such selection and designation but it withdrew from the district court and the judges thereof the right to make such selection and designation and imposed the duty upon the supreme court under its constitutional power of "general superintending control over all inferior courts", (ND Constitution, Section 86), to select and designate a substitute judge to act in the place and stead of a judge who had become disqualified by reason of the affidavit of prejudice. State v. First State Bank, 52 ND 231, 256–258, 202 NW 391, 401–402; Lowe v. District Court, 48 ND 1, at page 8, 181 NW 92, at page 95, second column.

Under the statute the disqualification of the judge is accomplished when an affidavit of prejudice is timely filed. State v. Kent, supra; State ex rel. Mattoon School District v. Circuit Court, 61 S Dak 154, 158–159, 246 NW 638; State ex rel. Hannah

v. Armijo, 38 N Mexico 73, 79, 28 Pac2d 511, 514; State ex rel. Weltmer v. Taylor, 42 N Mexico 405, 407, 79 Pac2d 937; Berger v. U. S. 255 US 22, 35–36, 65 L ed 481, 486, 487, 41 S Ct 230; State v. Peterson, 49 ND 117, 190 NW 309. When the affidavit has been filed the judge against whom it is directed has no authority to designate another judge to act in his place and stead and an order by such judge designating the other judge in the same judicial district,—the judge who normally would have presided at the trial if the disqualified judge had not presided,—is erroneous and invalid. State v. Peterson, supra.

The object sought to be accomplished by the designation of a substitute judge is to provide a judge with all the powers and charged with all the duties and responsibilities of the regular judge, and the statute evidences an intention that the substitute judge shall be endowed with such powers and charged with such duties and responsibilities. There is no provision in the statute indicating that the appointment of a substitute judge and the powers conferred upon him shall be restricted to certain acts. The statute provides "the Supreme Court shall designate a district judge to act in the place and stead of the judge disqualified." Section 29–1515, supra. There is no provision in the statute indicating that the appointment is limited in time other than the final disposition of the case in the court in which the judge has been designated to act. The statute specifically recognizes that if the case is not tried during the term at which it appeared for trial at the time the affidavit was filed the judge designated continues as judge and may try it at a subsequent term. NDRC 1943, Section 29–1516. The appointment and designation is not a general one and does not extend to matters or causes other than the one in which the designation is made. See 48 CJS, p 1127.

The authority of the judge who has been designated to act in a particular case in the place and stead of a disqualified judge is limited to the particular case for which he has been designated; it does not extend to other cases pending in the court in which the particular case is pending. 48 CJS, pp 1123, 1127; 17 A & E Ency L, 2d ed, p 749. But in the particular

case for which the substitute judge has been designated he becomes the judge of the court for all purposes until the case has been finally disposed of in that court or his designation has been rescinded. 48 CJS supra; 17 A & E Ency L, 2d ed, p 749; State ex rel. Kister v. De Voss, 212 Ind 541, 10 NE2d 287; State ex rel. Hodshire v. Bingham, 218 Ind 490, 33 NE2d 771, 134 ALR 1126; State v. Towndrow, 25 N Mexico 203, 180 Pac 282; Collier v. State, 52 Okla Cr Rep 346, 5 Pac2d 405; Kane v. Ferguson, 195 Okla 292, 157 Pac2d 194; Dotson v. Burchett et al., 301 Ky 28, 190 SW2d 697, 162 ALR 636; see also Neely v. State, 194 Ind 667, 142 NE 852.

When the case has been finally disposed of in the court in which the substitute judge has been designated to act, either by final decision or by transfer of the case to another court, the duties of the substitute judge have been discharged and his authority under the order of designation are terminated. State v. Garrison, 68 ND 71, 276 NW 693. But while the case remains pending in the court in which the substitute judge has been designated to act, the substitute judge alone is authorized to act in the case and the authority of the regular judge or judges is suspended as far as they relate to the case for which the substitute judge has been designated. State v. Towndrow, supra; Collier v. State, supra; see also State ex rel. Kister v. De Voss, supra; State v. Donnelly, 68 ND 76, 276 NW 695; Dotson v. Burchett, supra; Kane v. Ferguson, supra.

It is contended that the designation by the Supreme Court confers authority upon the judge designated only to act as presiding judge upon *the trial* of the particular action in which the designation is made, and that such designation vests exclusive authority in the substitute judge only in matters incident to or growing out of the trial, and it is argued that the designation does not vest in such substitute judge exclusive authority to act as judge where a plea of guilty is interposed.

It is said that when a plea of guilty is interposed there is no trial of any issues and the designation does not vest the substitute judge with exclusive authority to act, and that any

regular judge of the court may accept the plea and pronounce sentence and judgment.

In our opinion this contention is not well founded and does not accord with the legislative intention and purpose as evidenced by the statute. We think the statute clearly evidences an intention that the judge designated by the Supreme Court shall have all the powers and be charged with all the duties and responsibilities of judge in the particular case. The statute does not evidence any intention to restrict or to limit the powers of such judge to certain features of the case. The judge is given full and complete authority as judge in the particular case in which he is designated to act. In every pending criminal action there is a possibility there may be a plea of guilty either to the offense charged or to some included offense. The plea of guilty does not dispense with judicial action. On the contrary, such plea invokes and requires action by the judge.

When a judge is selected and designated to act as judge in a criminal action in the place and stead of a judge who is disqualified, the designation is made for all purposes and the authority vested extends to the disposition of all questions that may arise requiring action by the judge. The withdrawal of a plea of guilty and the entry of a plea of guilty are among the possible or even probable incidents that may occur. When a judge is designated by the order of the Supreme Court to act as judge in a criminal action in which an affidavit of prejudice has been filed, the case in which such judge is designated is in effect set aside from other cases pending in that court and the case is specifically assigned to the judge designated for disposition and he alone is properly authorized to act as judge or to perform any judicial act in the case while the order is in effect and any judicial action by a judge other than the one so designated is erroneous. State v. Towndrow, supra; Collier v. State, supra; see also State ex rel. Kister v. De Voss, supra; State v. Donnelly, supra; Dotson v. Burchett, supra; Kane v. Ferguson, supra.

State v. Towndrow, supra, involved the question of the scope and effect of an order designating a judge of a district court

to act as judge in a particular case in the place and stead of the regular presiding judge in another judicial district. The Constitution of New Mexico, (Article 6, Section 15), provides:

"Whenever the public business may require the Chief Justice of the Supreme Court shall designate any district judge of the state to hold court in any district, and two or more district judges may sit in any district or county separately at the same time."

In construing and applying this provision the Supreme Court of New Mexico held:

"Under this provision of the Constitution, where the Chief Justice of this court has designated a district judge other than the regular presiding judge of any given district to preside over the trial of any given cause, his jurisdiction of said cause is exclusive, and continues until the cause is disposed of or until his designation is rescinded." (Syllabus, 25 N Mexico 203, 180 Pac 282).

In general the holding of the Supreme Court of New Mexico seems pertinent here. The designation in State v. Towndrow was made by the Chief Justice of the Supreme Court pursuant to the authority and duty imposed upon him by the Constitution. The order designating Judge Hutchinson in State v. Maresch was made by the Supreme Court, in the exercise of its constitutional power of superintending control over inferior courts, pursuant to the provisions of the statute requiring the Supreme Court in the proper case to make such order.

We are agreed that Judge Hutchinson was vested with the exclusive authority to act as judge and to discharge any and all judicial acts in the case and that Judge Thomson erred in acting in the case and in pronouncing sentence and judgment.

The question, therefore, presents itself whether the acts of Judge Thomson were merely erroneous and voidable or were wholly void.

At common law judicial acts of a disqualified judge are generally held to be merely erroneous and voidable, but not void. 48 CJS p 1109; 30 Am Jur p 802, Sec. 97; 17 A & E Ency L, 2d ed, pp 742, 743. Where the disqualification of a judge is the

creature of a constitutional or statutory provision the answer to the question whether the act of a disqualified judge is void or voidable depends upon the language of the applicable constitutional and statutory provisions and the nature of the disqualification thereunder. 48 CJS p 1109; 30 Am Jur p 802, Sec 97; 17 A & E Ency L, 2d ed, pp 742, 743.

American Jurisprudence says:

"According to the weight of authority, at common law, the acts of a disqualified judge are not mere nullities; they are simply erroneous and liable to be avoided or reversed on proper application, but cannot be impeached collaterally, except in the case of those inferior tribunals from which no appeal or writ of error lies. This is also the general rule under statutes, in the absence of any express provision to the contrary or expressly prohibiting the judge from sitting, especially where the disqualification is regarded as a matter of personal privilege merely." 30 Am Jur p 802, Sec 97.

Corpus Juris Secundum says:

"While the judicial act of a disqualified judge is an error subject to vacation or reversal, it has generally been held that at common law such act is merely voidable but not void, and that such an error does not affect the judge's jurisdiction or render his acts subject to collateral attack. Since, however, the disqualifications of judges are mostly the creatures of statute, whether the act of a disqualified judge under the provision declaring him disqualified is void or voidable depends on the language of the statute or the nature of the disqualification thereunder; some statutes are considered merely as declaratory of the common law. If the right to object to a disqualified judge is a personal privilege of the litigant, or his disqualification may be waived, it has generally been held that his act is voidable but not void, and that it is not subject to collateral attack.

. . .

"On the other hand, if the disqualification is of a nature that cannot be waived, or is considered as founded in public policy, the act of a disqualified judge is absolutely void, and this is also true where the constitution or statute creating the disqualifica-

tion by mandatory provision prohibits the judge from acting. If the act is considered void it is subject to collateral attack; and it is void notwithstanding an attempt to waive the disqualification or to confer jurisdiction by consent." 48 CJS pp 1109–1110, Section 97.

This is not a case where it is claimed that the person who has acted as judge was wholly disqualified from acting as judge of the court at all, and that consequently there was no judge, and no court at all. There is no question here but that the District Court of Walsh County with Judge Thomson as presiding judge was a legal court authorized to act in all matters within the jurisdiction of the court; nor is there any question about the authority of Judge Thomson to preside and act as judge of such court except in any particular case in which he might be disqualified.

Judge Thomson was a duly elected and qualified judge of the District Court of the Second Judicial District and hence one of the regular judges of the District Court of Walsh County and he had authority to act as judge of that court in all cases except in cases in which he might be disqualified. The disqualification of Judge Thomson in the case of the State of North Dakota v. Leonard Maresch arose alone from the fact that Judge Hutchinson had been designated to act as judge in that particular case by an order of the Supreme Court entered pursuant to law. There were no other grounds of disqualification. He was not disqualified because of any interest in the action, or relationship to the parties, or because of any charge of bias or prejudice made against him by either of the parties in the action. There are no constitutional or statutory provisions expressly prohibiting Judge Thomson from acting in the case. The disqualification arose only because Judge Hutchinson had been selected and designated to act as judge in the case and as a consequence other judges were by necessary implication unauthorized to act in the case. Aside from the disqualification of Judge Thomson, the proceedings had were in all respects regular. At the time such proceedings were had the District Court of Walsh County was open and had authority to receive a plea of guilty in a criminal action and to pronounce sentence and judgment therein. State

v. Pedie, 58 ND 27, 224 NW 898; State ex rel. Johnson v. Broderick, 75 ND 340, 27 NW2d 849.

The defendant was present and represented by his attorney, and the State was represented "by its regularly authorized officer," the State's Attorney of Walsh County, (Schideler v. Indiana, 129 Ind 523, 29 NE 36, 28 ASR 206, 16 LRA 225), whose duty it was under the law to attend the District Court and to conduct on behalf of the state all prosecutions for public offenses. NDRC 1943, 11–1601 (1). It is true the proceedings had before Judge Thomson were also contrary to the order of this court designating Judge Hutchinson to act as judge in the case, for although, in the very nature of things, such order contained no express provision that no judge other than Hutchinson should act as judge in the case, we think that this was necessarily implied. However, error in construing the order and the law under which it was made or failure to conform to the order did not render the action of the trial court or of the judge void but rendered it merely erroneous and voidable. 4 CJ p 1243, Sec 3306; 5 CJS p 1557, Sec 1993.

While the proceedings had before Judge Thomson were erroneous, they were doubtless had in the belief that they were regular and proper. We are satisfied there was no intention to disregard or circumvent the order of this court or to do any act that was not entirely conformable to the law. We are also satisfied that in instituting the proceeding in this court to review the actions then had the Attorney General was actuated only by a compelling sense of duty. He had come to the conclusion that the proceedings had before Judge Thomson were erroneous and probably void and he further believed that the plea of guilty to second degree manslaughter should not have been accepted. In short, we are satisfied that the actions had in the District Court of Walsh County which gave rise to the controversy and to the subsequent proceedings had in this court for the review of the validity of such proceedings were in no sense and at no time actuated by other than proper motives, but were the result of honest differences of opinion on the part of men who had no

purpose other than to faithfully discharge their respective official duties.

We are agreed that the order designating Judge Hutchinson to act as judge in the case of the State of North Dakota v. Leonard Maresch conferred upon him exclusive authority to act as judge in such case and that, therefore, Judge Thomson was disqualified to act as judge; but we are also agreed that his actions were not void but were merely erroneous and voidable and that the judgment of conviction rendered by him is not subject to collateral attack (17 A & E Ency L p 743; 48 CJS p 1109), and is not reviewable except upon consent of the defendant. 1 Bishop Crim Law, 9th Ed p 758, Sec 1026; State of N. J. v. Hart, 90 NJL 261, 101 Atl 278, LRA1917F, 985; State v. Kelsey, 49 ND 148, 190 NW 817. Leonard Maresch was, therefore, put in jeopardy by his plea of guilty and the judgment of conviction rendered upon such plea, and such judgment is a bar to any further prosecution for the offense charged in the Information that has been filed against him. N Dak Const, Sec 13; NDRC 1943, 29–0107, 29–0109; The People v. Goldstein, 32 Calif 432; 22 CJS p 385, Sec 248; 17 A & E Ency L, 2d ed, p 592; Rupert v. State, 9 Okla Crim Rep 226, 131 Pac 713, 45 LRA (NS) 60; Belter v. State, 178 Wis 57, 189 NW 270. See also, State v. Kelsey, 49 ND 148, 190 NW 817.

The fact that the proceedings had before Judge Thomson were erroneous and that the judgment rendered was voidable does not destroy its effectiveness as a bar to further prosecution. 15 Am Jur, p 51; 22 CJS, pp 378, 382, 383, 402, 403. Such judgment "will stand against everything done for its reversal without the defendant's consent." 1 Bishop Crim Law, 9th Ed, p 758, Sec 1026. See also, State v. Hart, 90 NJL 261, 101 Atl 278, LRA 1917F, 985; State v. Kelsey, 49 ND 148, 190 NW 817. It constitutes a bar to further prosecution regardless of the irregularity in the proceedings had at the time the judgment was rendered. 1 Bishop Crim Law, 9th Ed, p 734, Sec 992, p 758, Sec 1026; 22 CJS, pp 378, 382, 383, 402, 403; 15 Am Jur 15; The People of Calif. v. Webb, 38 Calif 467; People v. My Sam

Chung, 94 Calif 304, 29 Pac 642, 28 ASR 129; People v. Terrill, 132 Calif 497, 64 Pac 894; State v. DeFord, 120 Ore 444, 250 Pac 220.

The order heretofore issued will be quashed and the proceeding for a supervisory writ dismissed. It is so ordered.

BURKE, J., and GRONNA, Dist. J., concur.

MORRIS and BURR, JJ., not participating.

NUESSLE, J. (dissenting). The history of the proceedings in this case is set out in the majority opinion in detail. I would add, however, that there are three judges in the Second Judicial District. When the affidavit of prejudice was filed against Judge Buttz, before whom the cause came on for trial in the first instance, the two other judges having expressed disqualifications to try the case, the Supreme Court designated Judge Swenson. After the judgment of conviction on the trial before Judge Swenson was reversed, the Supreme Court designated Judge Hutchinson in his place and stead as stated. In the meantime, however, one of the judges of the Second Judicial District, who had expressed disqualification, was succeeded in office by Judge Thomson who was not disqualified.

I am wholly in accord with what is said in the majority opinion except with respect to whether the acts of Judge Thomson were merely erroneous and voidable or were wholly void. But with the conclusion reached on this point I cannot agree.

Section 86 of the Constitution provides that:

"The Supreme Court . . . shall have a general superintending control over all inferior courts under such regulations and limitations as may be prescribed by law."

The statutes, Section 29–1513, et seq., NDRC 1943, among other things, provide that upon receipt of an affidavit of prejudice the Supreme Court shall designate a district judge to act in the place and stead of the judge disqualified. It seems to me that on the facts disclosed, when Judge Hutchinson was appointed, Judge Thomson was wholly without authority to

receive the plea interposed by the defendant or to take any other action in the case.

In other words Judge Thomson having no authority to act, (and the majority opinion concedes this), the consent of the defendant could not confer it upon him, and, therefore, all proceedings had before him were void. The statute under which the Supreme Court acted provides that it shall designate a trial judge to act in the place and stead of the judge disqualified. I cannot come to any other conclusion than that under this statute the judge then designated pursuant to it and the constitutional provision above quoted was designated for all purposes having to do with the case in question and though the statute does not say so expressly, its clear implication is that no other judge shall have any power and authority with respect to the case. And to hold otherwise is to emasculate the statute, thwart the legislative purpose and intent behind it, and make it possible to circumvent the exercise of the power of superintending control reposed in the Supreme Court and exercised pursuant to the statute. It is to be noted in this connection that after an affidavit of prejudice has been filed the statute further provides that no juror shall be excused except by the judge designated. See Section 29-1518. The construction I hold should be given this statute is in line with a public policy that aims at an orderly and consistent procedure in the trial and disposition of criminal causes.

Accordingly, I dissent.

CHRISTIANSON, Ch. J. (on petition for rehearing). The plaintiff has petitioned for a rehearing. The petition is largely a reargument of the questions considered and determined in the former opinion. It is earnestly and vigorously contended that the actions of Judge Thomson were void and that the judgment and sentence pronounced by him as judge of the District Court of Walsh County were nullities, and that this Court erred in not so holding.

The first ground is stated in the petition as follows:

"The Supreme Court in the opinion rendered on January 22, 1948, correctly finds:

"That the district court of Walsh County presided over by the Honorable Harold P. Thomson, at Grafton, North Dakota, on the 31st day of October, 1947, had no jurisdiction to hear or deterimne the issues between the State of North Dakota, plaintiff, and Leonard Maresch, defendant, and yet, it also finds that, once the Honorable Harold P. Thomson took jurisdiction, erroneously and without authority of law, the fact of the sentencing of Leonard Maresch for the crime of second-degree manslaughter cannot be undone nor can anyone question that act except the defendant himself."

The ground thus asserted is predicated upon an erroneous premise. This Court did not hold "that the district court of Walsh County presided over by the Honorable Harold P. Thomson, at Grafton, North Dakota, on the 31st day of October, 1947, had no jurisdiction to hear or determine the issues between the State of North Dakota, plaintiff, and Leonard Maresch, defendant." On the contrary in the former opinion we held that though the acts of Judge Thomson "in accepting the plea of guilty and pronouncing sentence and judgment upon the defendant," Leonard Maresch, were erroneous and the judgment of conviction voidable, that such action and judgment were not void, and "may not be attacked collaterally and are not reviewable except at the instance or upon consent of the defendant." It is true, as stated in the petition for rehearing, that we said in the former opinion:—

"When a judge is designated by the order of the Supreme Court to act as judge in a criminal action in which an affidavit of prejudice has been filed, the case in which such judge is designated is in effect set aside from other cases pending in that court and the case is specifically assigned to the judge designated for disposition and he alone is *properly authorized* to act as judge or to perform any judicial act in the case while the order is in effect and any judicial action by a judge other than the one so designated is erroneous."

The words "authorize" and "authorized" have different meanings dependent upon the connection and circumstances of their use. The word "authorize" may mean to invest with legal power

to act, or it may mean to permit, to afford just ground for, to justify, to give warrant for. See, Funk and Wagnall's New International Dictionary of the English Language and Webster's New International Dictionary, Second Edition; 7 CJS pp 1292–1293. As applied to the action of a judge or a court the words "authorize" and "authorized" may mean the legal power or jurisdiction conferred by law upon the judge or court, or they may have reference to the duty of the judge or court in the exercise of power or jurisdiction. See, Fauntleroy v. Lum, 210 US 230, 235, 52 L ed 1039, 1041, 28 S Ct 641. When it is said that a judge or a court is not or was not "authorized" to make some ruling or decision,—in this latter sense,—the idea intended to be conveyed is that it would be or was erroneous for the judge or court to exercise the judicial power vested in the judge or court in the particular way or under the particular circumstances and that the exercise by the judge or court of such powers in the particular manner or circumstances was an irregular or erroneous exercise thereof rendering the action subject to reversal when properly challenged in an appellate court, but "binding until reversed and set aside in some proper way." Harrigin v. Gilchrist, 121 Wis at p 230, 99 NW at p 934. The words "does not authorize" were used in this latter sense by the Supreme Court of Wisconsin in Allen v. State, 85 Wis 22, 54 NW 999. In that case the defendant was charged with murder, and under the charge made in the information he might have been found guilty of murder in the first, second, or the third degree. The jury returned a general verdict finding him guilty as charged in the information without specifying the degree. Motions in arrest of judgment and for a new trial were overruled and exceptions taken, and the defendant was sentenced to imprisonment for life,—the imprisonment prescribed and authorized only for murder in the first degree. The case was brought before the Supreme Court of Wisconsin by writ of error. That Court held that, "A general verdict of guilty upon an information under which the defendant may properly be convicted of murder in the first, second, or third degree, *does not authorize* the court to pronounce judgment," (Syllabus, Paragraph 1, 85 Wis p 22), and ordered that

the judgment of conviction be reversed and the cause remanded for a new trial. Later, in the case of In Re Eckart, 85 Wis 681, 56 NW 375, (decided about five months later), involving precisely the same state of facts the defendant in a criminal action against whom a similar verdict had been returned and a similar sentence had been pronounced challenged the validity of the judgment of conviction by writ of habeas corpus. The Supreme Court of Wisconsin held that the judgment was not void or subject to collateral attack and denied the writ. Thereafter the defendant applied to the Supreme Court of the United States for a writ of habeas corpus and that Court reached the same conclusion as had been reached by the Supreme Court of Wisconsin and held that the judgment of conviction was erroneous and voidable, but not void. In the decision in the case the Supreme Court of the United States used the following pertinent language:

"In its decision refusing the writ applied for by Eckart, the supreme court of Wisconsin held that while the conviction under the sentence in question was erroneous, the error in passing sentence was not a jurisdictional defect and the judgment was therefore not void. In this view we concur. The court had jurisdiction of the offense charged and of the person of the accused. The verdict clearly did not acquit him of the crime with which he was charged, but found that he had committed an offense embraced within the accusation upon which he was tried. It was within the jurisdiction of the trial judge to pass upon the sufficiency of the verdict and to construe its legal meaning, and if in so doing he erred, and held the verdict to be sufficiently certain to authorize the imposition of punishment for the highest grade of the offense charged, it was an error committed in the exercise of jurisdiction, and one which does not present a jurisdictional defect, remediable by the writ of habeas corpus. . . .

"The case of *Ex parte Bigelow* determined that the action of a trial court in overruling a plea of former jeopardy could not be reviewed on habeas corpus. In the course of the opinion, the court said (p. 330 (1006)):

" 'The trial court had jurisdiction of the offense described in

the indictment on which the prisoner was tried. It had jurisdiction of the prisoner, who was properly brought before the court. It had jurisdiction to hear and to decide upon the defenses offered by him. The matter now presented was one of those defenses. Whether it was a sufficient defense was a matter of law on which that court must pass so far as it was purely a question of law, and on which the jury, under the instructions of the court, must pass, if we can suppose any of the facts were such as required submission to the jury. If the question had been one of former acquittal, a much stronger case than this, the court would have had jurisdiction to decide upon the record whether there had been a former acquittal for the same offense, and if the identity of the offense were in dispute it might be necessary, on such a plea, to submit that question to the jury on the issue raised by the plea. The same principle would apply to a plea of a former conviction. Clearly, in these cases the court not only has jurisdiction to try and decide the question raised, but it is its imperative duty to do so. If the court makes a mistake on such trial it is error which may be corrected by the usual modes of correcting such errors, but that the court had jurisdiction to decide upon the matter raised by the plea, both as matter of law and of fact, cannot be doubted. . . . It may be confessed that it is not always very easy to determine what matters go to the jurisdiction of a court so as to make its action, when erroneous, a nullity. But the general rule is that when the court has jurisdiction by law of the offense charged, and of the party who is so charged, its judgments are not nullities.' " Re Eckart, 166 US 481–485, 41 L ed 1085, 1086–1087, 17 S Ct 638.

It is by no means true that every unauthorized action of a court,—even action which the law says shall not be taken,—affects the jurisdiction of the court and renders the action void. If the unauthorized action is one not within the court's jurisdiction,—i.e. if the court has no power to inquire into the facts, to apply the law, and render decision,—then the action is void; but if the erroneous and unauthorized action of the court is one in the exercise of the court's power, then the action is not void, but is merely erroneous and voidable.

"Any error of law committed by the trial court (in the exercise of its jurisdiction) though serious and fundamental to rights of parties, is not the equivalent either of excess or want of jurisdiction." Rock Springs & Coal Mining Company v. Black Diamond Coal Co., 39 Wyo 379, 272 P 12.

"If court merely applies wrong rule of law to situation presented, it is not acting without jurisdiction, but in erroneous exercise of its jurisdiction." Artman, et al. v. Artman, 111 Conn 124, 149 A at p 247, Syllabus, Paragraph 8.

In Fauntleroy v. Lum, 210 US 230, 52 L ed 1039, 28 S Ct 641, the Supreme Court of the United States had occasion to consider whether the courts of Mississippi were without jurisdiction of causes arising out of gambling transactions in futures because of the provisions of the laws of Mississippi which made dealing in futures a misdemeanor and provided that contracts of that sort, made without intent to deliver the commodity or to pay the price "shall not be enforced by any court." The Supreme Court of the United States held that the statute did not go to the jurisdiction of the court, that is, to its power to decide, but only laid down a rule "by which the court should decide." In the decision in the case the court said:

"No doubt it sometimes may be difficult to decide whether certain words in a statute are directed to jurisdiction or to merits, but the distinction between the two is plain. One goes to the power, the other only to the duty, of the court. Under the common law it is the duty of a court of general jurisdiction not to enter a judgment upon a parol promise made without consideration; but it has power to do it, and, if it does, the judgment is unimpeachable, unless reversed. . . . Whether a given statute is intended simply to establish a rule of substantive law, and thus to define the duty of the court, or is meant to limit its power, is a question of construction and common sense. When it affects a court of general jurisdiction, and deals with a matter upon which that court must pass, we naturally are slow to read ambiguous words as meaning to leave the judgment open to dispute, or as intended to do more than to fix the rule by which the court should decide.

". . . The statute now before us seems to us only to lay down a rule of decision. The Mississippi court in which this action was brought is a court of general jurisdiction and would have to decide upon the validity of the bar, if the suit upon the award or upon the original cause of action had been brought there. The words 'shall not be enforced by any court' are simply another, possibly less emphatic, way of saying that an action shall not be brought to enforce such contracts. As suggested by the counsel for the plaintiff in error, no one would say that the words of the Mississippi statute of frauds, 'An action shall not be brought whereby to charge a defendant,' Code 1892, Sec 4225, go to the jurisdiction of the court. Of course it could be argued that logically they had that scope, but common sense would revolt. See 191 US 375, 48 L ed 227, 24 Sup Ct Rep 92. A stronger case than the present is General Oil Co. v. Grain, 209 US 211, 216, ante, 754, 758, 28 Sup Ct Rep 475." 210 US at pp 234–235, 52 L ed at p 1041, 28 S Ct 641.

In Burnet v. Desmornes y Alvarez, 226 US 145, 57 L ed 159, 33 S Ct 63, it was contended that a statute fixing the time within which an action to claim filiation must be brought prescribed a jurisdictional condition and that the court had no power to entertain such action or render judgment therein determining the existence of the right claimed unless such action were brought within the period prescribed by the statute. The court held that the condition prescribed did not affect the jurisdiction of the court. In the decision in the case the court said:

"Whether prescription goes only to the remedy or extinguishes the right, it affects the jurisdiction no more than any other defense. When a court has general jurisdiction to try the question whether an alleged right exists, the rules that determine the existence of the right ordinarily govern the duty only of the court, not its power. Its judgment that the right is established cannot be impeached collaterally by proof that the judgment was wrong. For instance, a common-law court ought not to give judgment for the plaintiff upon a parol promise without consideration, but if it does so the judgment is not open to collateral attack. Even words in a statute that might seem to affect the

power of the court, such as 'no action shall be brought,' in the statute of frauds, are assumed without question merely to fix the law by which the court should decide, as is explained in Fauntleroy v. Lum, 210 US 230, 235, 52 L ed 1039, 1041, 28 Sup Ct Rep 641." 226 US 147, 57 L ed 160, 33 S Ct 63.

The laws of this state provide that whenever a person prosecuted for murder pleads guilty he shall designate in his plea whether he is guilty of murder in the first degree or in the second degree. NDRC 1943, Sec 12–2722. Where an information is filed charging the defendant with murder in the first degree and the defendant enters a plea that he is "guilty as charged in the information" without specifying the degree, the trial court is *not authorized* to pronounce judgment upon the defendant; and if the court pronounces judgment upon the defendant for murder in the first degree, such sentence and judgment are erroneous and invalid and subject to reversal when properly challenged in the appellate court. State v. Noah, 20 ND 281, 124 NW 1121. But such judgment is not a mere nullity and may not be attacked collaterally, it is binding until reversed and set aside in some proper way. State ex rel. Smith v. Lee, 53 ND 86, 205 NW 314.

The laws of this state make it the duty of the trial court in all criminal actions to reduce all instructions to writing before they are read to the jury, unless "by consent of both parties entered in the minutes" it is agreed that oral instructions may be given, (NDRC 1943, Sec 21–30), and the trial court is *not authorized* to give oral instructions in a criminal action without the consent of the defendant, and the giving of oral instructions without such consent constitutes reversible error. State v. Mitchell, 49 ND 726, 193 NW 310. But it has never been claimed that the action of the trial court in giving oral instructions in violation of such statutory requirement constitutes want or excess of jurisdiction rendering a verdict of guilty and judgment of conviction pronounced pursuant thereto void. It has been assumed without question that such action by the trial court constituted merely an erroneous exercise of jurisdiction subject to be set aside when properly challenged in the appellate court.

When a criminal action is tried to a jury it is the duty of

the trial court to decide all questions of law which may arise in course of the trial and to instruct the jury as to the law of the case, and it is for the jury to determine all questions of fact. NDRC 1943, Sections 29-2103 and 29-2104; State v. Young, 55 ND 194, 212 NW 857. And where in such case there is competent evidence reasonably tending to show that the accused is guilty of the offense charged, it is the duty of the court to submit all questions of fact to the jury for determination and the court is not authorized to advise or instruct the jury to return a verdict of acquittal. Yet, if the trial court in such case misconstrues a statute, applies the wrong rule of law, or places an erroneous construction on the evidence and as a consequence erroneously advises or instructs the jury to return a verdict of not guilty, such erroneous and unauthorized action on the part of the trial court does not constitute an act without or in excess of juris-diction and does not render the verdict a nullity but the verdict operates as an acquittal of the defendant even though the result is that a defendant clearly guilty will go without any punishment whatsoever. Belter v. State, 178 Wis 57, 189 NW 270; State v. Dillard, 225 Ia 915, 281 NW 842. See, also, State v. Meen, 171 Wis 36, 176 NW 70; State v. Kelsey, 49 ND 148, 190 NW 817.

Thus, in this case, if upon the first trial the then presiding trial judge had advised the jury to return a verdict of not guilty and if the jury had returned such verdict in accordance with the court's advice, the action of the trial court and the verdict re-turned would not have been acts without or in excess of juris-diction and hence void, but such verdict would have constituted a bar to further prosecution. Belter v. State, supra; State v. Dillard, supra; State v. Kelsey, supra.

It goes without saying that a trial court is never authorized to exclude competent evidence and deprive the defendant in a criminal action of a valid defense. Yet if the trial court commits an error of law and excludes such evidence and thereby deprives the defendant of his only real defense, the erroneous action of the trial court "did not go to the jurisdiction of the trial court" (332 US 181, 91 L ed 1989, 67 S Ct 1588), but constitutes merely an error in the exercise of jurisdiction, subject to reversal if and

when properly challenged but binding until reversed and set aside in some proper way. Sunal v. Large, 332 US 174, 91 L ed 1982, 67 S Ct 1588.

At the time the actions of Judge Thomson in question here were had, he was presiding as judge of the District Court of Walsh County which was then in session. He was a duly elected, qualified and acting judge of such court. The District Court of Walsh County had undoubted jurisdiction in criminal cases involving the crime of murder charged to have been committed within Walsh County. If the order of this court designating Judge Hutchinson had not been in existence, there could have been no doubt that all proceedings then had were in every respect regular and valid. In short, the only objection urged against the jurisdiction of the court as then constituted and the validity of such actions then had resulting in the pronouncement of sentence and judgment of conviction upon Leonard Maresch is that another judge, namely Judge Hutchinson, had been designated by order of this Court to try the case. There is no claim that Judge Thomson was disqualified on account of any relationship to parties or interest in the action, and it is admitted that no affidavit of prejudice had ever been filed against him. So, the only question is as to the effect of the order that had been made by this court designating Judge Hutchinson as judge to try the case.

In every case brought on for trial the presiding judge is confronted at the outset with and must inquire into and determine (1) whether for any reason he is disqualified to act as a judge in the case, (48 CJS p 1079, Sec 93; Jewel Ridge Coal Corporation v. Local No. 6167, United Mine Workers of America, etc., 325 US 897, 89 L ed 2007, 65 S Ct 1550); and (2) whether the court over which he presides has jurisdiction to entertain the cause, (21 CJS p 175, et seq.) It is true that in most cases the presiding judge probably knows whether he has had any connection with, or has any interest in, the litigation or is related to the parties, or whether he has become disqualified by virtue of any steps taken under a statute such as the filing of an affidavit of prejudice. Nevertheless the questions confront the presiding

judge in every case. In this case it appears that Judge Thomson was familiar with what had transpired in the case; that he knew that an affidavit of prejudice had been filed against Judge Buttz, and that Judge Swenson had been designated as trial judge by order of this Court, that later such designation had been cancelled, and Judge Hutchinson had been designated by order of this Court to try the action. On October 31, 1947, the State's Attorney of Walsh County and the defendant and his counsel appeared in the District Court of Walsh County which was then in session with Judge Thomson presiding. The defendant asked permission to withdraw his plea of not guilty and to enter a plea of guilty to manslaughter in the second degree. The statute (NDRC 1943, Sec 29–1417) provides that:

"The defendant, with the consent of the court and of the state's attorney, may plead guilty of any lesser offense than that charged which is included in the offense charged in the indictment or information, or of any lesser degree of the offense charged."

When the State's Attorney of Walsh County and the defendant and his counsel appeared in the District Court of Walsh County on October 31, 1947, and the defendant asked permission to withdraw his plea of not guilty and to enter a plea of guilty to manslaughter in the second degree and the State's Attorney consented that the defendant be permitted to plead to the lesser offense, it became necessary for Judge Thomson to take some action. He could not ignore the parties. He was confronted with the question whether he was qualified to act as judge in the case and whether the court over which he presided, as then constituted, had jurisdiction of the cause and could consider and determine the questions presented. It became incumbent upon Judge Thomson to determine the effect of the order that had been made by this Court designating Judge Hutchinson as trial judge. In making such determination he was required to construe the order and the statute pursuant to which it was made. Judge Thomson construed the order as conferring exclusive authority upon Judge Hutchinson only to act as judge on the "trial" of the case, that is, on a judicial examination of the issues

between the parties, and where the issues of fact were tried to a jury, (see State v. Hazledahl, 2 ND 521, 524, 52 NW 315, 316–317, 16 LRA 150; State v. Pedie, 58 ND 27, 32, 224 NW 898, 900), and he was of the view that inasmuch as a plea of guilty dispensed with such "trial" the order designating Judge Hutchinson did not operate to disqualify him from accepting a plea of guilty and pronouncing sentence and judgment. As we held in the former opinion, such decision of Judge Thomson was erroneous, and his actions in accepting the plea of guilty and pronouncing sentence and judgment were irregular and erroneous; but such "error in contruing the order and the law under which it was made or failure to conform to the order did not render the action of the trial court or of the trial judge void but rendered it merely erroneous and voidable."

In the former opinion we cited State v. Towndrow, 25 NM 203, 180 P 282, and quoted from the syllabus in that case. In the petition for rehearing it is asserted that the holding of this court that the actions of Judge Thomson were not void but were merely erroneous and voidable is contrary to the decision of the Supreme Court of New Mexico in State v. Towndrow. It is true that in the paragraph of the syllabus which we quoted the Supreme Court of New Mexico used the term "jurisdiction" with reference to the authority vested in the judge that has been designated by the chief justice of the Supreme Court of New Mexico to preside over the trial of a given cause, and there are certain statements in the opinion indicating that the court was of the mind that as a result of such designation a regular judge of the district was deprived of all power to act as judge in the cause and that any action by a judge other than the one so designated was void. We deemed it unnecessary to make any comment upon the language so used by the Supreme Court of New Mexico. We did not indicate any disapproval of anything that was said in the opinion nor did we indicate our approval of all that was said by the court in such opinion. We said: "In general the holding of the Supreme Court of New Mexico seems pertinent here." In the Towndrow case the Supreme Court of New Mexico held that where a district judge other than the

regular presiding judge has been designated by the chief justice of the supreme court to preside over the trial of any given cause that it is error for the regular judge to preside over the trial of such cause and render judgment therein. We deemed this holding pertinent to the question under consideration in this proceeding. If the Supreme Court of New Mexico intended to hold and did hold that such erroneous action was one without or in excess of jurisdiction and consequently wholly void then, as our opinion shows, we do not agree that that would be the result under the laws of this state where a judge from another district has been designated by this court to act as trial judge in a given case in the place of a judge against whom an affidavit of prejudice has been filed and a regular judge of the court in which the action is pending (other than the one designated by this court), and against whom no affidavit of prejudice has been filed, presides over the trial with the consent of both parties.

In the opinion in the Towndrow case it is stated that the trial of the action was begun on October 12, 1916, and that on the 13th of October a temporary writ of prohibition and order to show cause was issued out of the Supreme Court prohibiting the judge who was conducting the trial from proceeding with the trial and ordering him to show cause why he should not be permanently restrained from so doing. That a hearing was had upon such writ and that "a majority of the court exercised its discretion to refuse the writ upon the ground that the jurisdictional question would be still available to the defendant in case of conviction and in view of the fact that the trial had already begun." That thereupon the trial was resumed and on October 22, 1916, a verdict of voluntary manslaughter was returned. That thereafter the defendant's motion for a new trial was overruled and the case brought to the Supreme Court on appeal. 25 NM at pp 204–205. It appears therefore that as a result of the decision of the Supreme Court on the application for a writ of prohibition the parties were required to, and did, proceed to obtain a review of the rulings which were challenged in the manner prescribed for the review of errors of law and apparently no attempt was made to attack the judgment collaterally, such

as by habeas corpus, on the ground that the judgment was a nullity.

The order designating the trial judge in State v. Towndrow was not made pursuant to the provisions of a statute or because an affidavit of prejudice had been filed against the presiding judge. The order was made under the authority of a provision of the Constitution of New Mexico (Article 6, Section 15) which provides:

"Whenever the public business may require, the Chief Justice of the Supreme Court shall designate any district judge of the state to hold court in any district, and two or more district judges may sit in any district or county separately at the same time."

New Mexico also has a statute providing for disqualification of a judge against whom an affidavit of prejudice has been filed. New Mexico Statutes 1941, Section 19–508. The statute provides that where a party to any action or proceeding, civil or criminal, "shall make and file an affidavit that the judge before whom the action or proceeding is to be tried or heard cannot according to the belief of the party to said cause making such affidavit, preside over the same with impartiality, such judge shall proceed no further therein, but another judge shall be designated for the trial of such cause either by agreement of counsel representing the respective parties or upon the failure of such counsel to agree, then such facts shall be certified to the chief justice of the Supreme Court of the state of New Mexico, and said chief justice of the Supreme Court of the state of New Mexico, shall thereupon designate the judge of some other district to try such cause."

The Supreme Court of New Mexico has held that the disqualification of a judge is accomplished when the affidavit provided for in the statute is timely filed. State ex rel. Hannah, et al. v. Armijo, 38 NM 73, 28 P2d 511; State ex rel. Weltmer v. Taylor, 42 NM 405, 79 P2d 937. The court also has held repeatedly that the disqualification resulting from the filing of such affidavit may be waived by the parties. (Of course, if the disqualification goes to the judge's power to act, and his acts "are absolutely void or without jurisdiction", then obviously power

and jurisdiction cannot be conferred by waiver or consent. 48 CJS 1101, 1104. See, also, 22 CJS pp 243–244.)

In State ex rel. Lebeck v. Chavez, 45 NM 161, 173, 113 P2d 179, 187–188, the court said:

"We have said a good deal upon the question of disqualifying a trial judge under the provisions of this act. The law may be said to be now well settled and generally understood. . . .

"There can be no question that this disqualification, as well as the constitutional disqualification relating to kinship, interest, etc. (Sec 18, Art 6, Const), though unlike the rule prevailing in many states, may be waived. We have heretofore held that this disqualifying language used in our constitution is not absolute and the parties may waive it. State v. Gonzales, 43 NM 498, 95 P2d 673. See Kavanaugh et al. v. Delgado et al., 35 NM 141, 290 P 798; Gutierrez v. Middle Rio Grande Conservancy Dist. 34 NM 346, 282 P 1, 70 ALR 1261; Tharp v. Massengill, 38 NM 58, 28 P2d 502, 510. It is obvious that disqualification for prejudice may be waived; and it is waived by implication as well as by specific acts of the party having a right to rely thereupon. See note in 5 ALR 1604, citing numerous authorities. Such 'disqualification resulting from the filing of an affidavit of prejudice is waived where the affidavit is withdrawn.' 30 Am Jur, Judges, par 95, 801; State v. Ham, 24 SD 639, 124 NW 955, Ann Cas 1912A 1070."

The question of waiver of disqualification resulting from the filing of an affidavit of prejudice against a judge arose and was considered again by the Supreme Court of New Mexico in State v. Garcia, 47 NM 319, 142 P2d 552, 149 ALR 1394. In that case the defendant was charged with murder. After having made and filed an affidavit of prejudice against the presiding judge the defendant voluntarily appeared before the judge and asked permission to withdraw his plea of not guilty and to enter a plea of guilty to murder in the second degree. The judge accepted the plea and pronounced sentence and judgement upon the defendant. Thereafter the defendant moved that the sentence and judgment be vacated and that he be afforded a trial by jury on the charge laid against him in the information. The motion

was based upon the ground that the judge against whom the affidavit of prejudice had been filed "was without jurisdiction to preside in the case." (47 NM p 322, 142 P2d 553). In the opinion in the case the court, after stating the pertinent facts, says:

"On these facts defendant says the resident judge was disqualified to accept the plea of guilty and sentence him. In this he is in error. As a matter of fact, the defendant himself, by asking the judge to rule upon his motion for change of venue, lost the right to disqualify the judge under the statute mentioned. State ex rel. Weltmer v. Taylor, 42 NM 405, 79 P2d 937; State ex rel. Lebeck v. Chavez, 45 NM 161, 113 P2d 179. And, passing any question of the effect of the judge's 'acceptance of disqualification' following filing of the affidavit no formal recusation by entry or otherwise having occurred, if it did operate to disqualify, the disqualification was waived when the defendant voluntarily appeared before him and asked him to accept a plea of guilty to second degree murder. The statutory disqualification may be waived, expressly or by implication. State ex rel. Lebeck v. Chavez, supra." 47 NM at p. 322, 142 P2d at p 554.

We adhere to the former opinion. The petition for a rehearing is denied.

BURKE, J., and GRONNA, District J., concur.