[File No. Cr. 173.]

STATE OF NORTH DAKOTA, Respondent, v. FRED TAYLOR, Appellant.

(293 N. W. 219.)

Opinion filed July 8, 1940.

*Cameron & Cameron,* for appellant.

*Alvin C. Strutz,* Attorney General, and *Eugene A. Burdick,* State's Attorney, for respondent.

BURR, J. On November 15, 1939, the defendant was arraigned on the charge of kidnapping, alleged to have been committed on September 15, 1939, and entered a plea of not guilty. In addition, the defendant pleaded "that he has been once in jeopardy for the offense charged in the information, to wit: that on the 18th day of September, 1939, he was found guilty of the crime of carrying concealed weapons which involved any and all acts incident to the matters charged in the information in the present case, and for which he was duly sentenced and is now serving his sentence."

The court declined to submit to the jury the issue raised by this plea on the theory there was nothing to submit on the record in the case.

On November 17 the jury returned a verdict of guilty as charged, and on the same day, the defendant was sentenced to be "imprisoned in the State Penitentiary at Bismarck, North Dakota, at hard labor, for the term of fifteen (15) years commencing at twelve o'clock, noon, of this day, this judgment and sentence to run consecutively with the judgment and sentence of one year in the Penitentiary heretofore imposed on September 18, 1939, upon said defendant, Fred Taylor, upon a conviction of the crime of Carrying a Concealed Weapon (Comp. Laws, Supp. 1925, § 9803b1) and that you stand committed until this sentence is complied with and until this judgment is satisfied."

The defendant moved for a new trial on the ground of insufficiency of the evidence to justify the verdict, and that "the court erred in withdrawing from the jury the issue raised by the plea of the defendant of a former conviction, said issue being one of fact for the jury and the court being entirely without legal authority to rule on question or issues of fact or to dismiss the said plea."

Further, "That the verdict is contrary to law and against the evidence." The motion for a new trial was denied, and the defendant ap-

pealed from the judgment of conviction, and from the order denying the new trial.

The specifications of error, stated briefly, are: That there is no evidence showing asportation, force, or direct evidence of fear on the part of the party alleged to have been kidnapped; that the court erred in withdrawing from the jury "the issue raised by the plea of the defendant of a former conviction;" that the court erred in passing judgment and sentence upon the defendant and providing that this sentence "should run consecutively with the Judgment and Sentence" imposed upon the defendant for the crime of carrying a concealed weapon; that the punishment imposed "was entirely out of proportion to any crime established by the" evidence, was imposed "by reason of passion and prejudice and against the conscience of the court," and in imposing it, the court "grossly exceeded his discretionary powers in imposing a sentence;" and that the court erred in denying the motion for a new trial.

There are but three issues to be reviewed on this appeal—the sufficiency of the evidence to justify the verdict, the action of the court with reference to the plea of former jeopardy, and the action of the court in assessing a penalty of fifteen years' imprisonment in the penitentiary.

The evidence was furnished wholly by the state. It shows that between five-thirty and five-forty-five o'clock P. M., of September 15, 1939, Mrs. J. . . . had parked her car diagonally in front of the post office in Williston. When she returned and entered the car for the purpose of leaving, the defendant was on the sidewalk directly in front of her car; as she started to back the car away, the defendant walked between her car and the car parked to the right of her. When the front door of the car came opposite to him, the defendant opened the door, got in quickly, and said to her, "Keep driving. Drive out to the highway;" this startled her, she killed the engine, and the car rolled back to the curb; the defendant said, "If you are nervous, I will drive."

The defendant was dressed in overalls with a bib, and had his right hand under the bib so that the bib "bulged considerably." Because of this condition, the woman thought defendant was carrying a gun. Later it developed it was a knife he was carrying.

The woman did as commanded, and in backing out, looked toward the persons in the car to her right and gave them a signal. At that time the defendant said, "You are Mrs. J. . . . , aren't you?" Upon her failure to reply, he repeated the question, and she answered, "Yes." He asked her, "Do you know who I am?" and upon her replying "No," he said, "Well, you are one in a hundred. I am Fred Taylor."

Mrs. J. . . . testified as to the effect, upon her and her will, of the repeated orders of the defendant to "Keep driving. Drive out to the highway." She related how this startled her, frightened her, etc.

When the defendant ordered her to drive, the woman backed away from the curb, feeling, as she states, "I felt compelled to." She drove a short distance, and as she attempted to turn into the curb again, the defendant said to her, "Drive on!" She replied, "You can have this car if you want it, but I am not going with you."

At that moment, a Mr. Johnson opened the right-hand door of the car. He testified that a Mrs. Batty hailed him. Without relating her statements, the result was that he hurried to the car, opened the door, and seeing Mrs. J. there, he grabbed hold of the defendant and said, "Come on, get out of here," and he came out with Mr. Johnson's hand still on his shoulder. They walked toward Johnson's car, and the defendant said, "Mr. Johnson, I don't want to get into any trouble, I have made a terrible mistake. I got into the wrong car." He repeated the same at the time Mr. Johnson entered his own car.

In the meantime, Mrs. J. had driven around the corner and found a policeman, who came up and arrested the defendant as he was entering the post office. The policeman noticed that the defendant had his hand under the bib of his overalls. He testified he searched the defendant and found a knife carried under the bib. The knife was introduced in evidence and proved to be what was known as a skinning knife, eleven inches long and with the blade six inches in length. The defendant was not intoxicated, though the odor of liquor came from his breath.

Mrs. Batty testified she saw this defendant get into the car with Mrs. J. as the latter was attempting to leave the post office; she saw the defendant pass between the two cars, heard the door bang, and saw the defendant in the car. She testified Mrs. J. stalled the car, then

looked over at her, gave her an inclination of her head, proceeded to back out again, and as she was leaving, "she again turned and looked at me and in the same manner" so that Mrs. Batty hurried for help. She says she saw the change on the face of Mrs. J., and "She had paled perceptibly and became noticeably frightened."

There is no contradiction of this testimony, and the record shows further that the defendant stood in no relationship to Mrs. J. as guardian or as an officer; neither was he acting under any authority of law.

The charging part of the information states that the defendant "did wilfully, unlawfully and feloniously seize, confine and kidnap one Lucy B. J. . . . , against her will, with the intent to cause her, without authority of law, to be kept and detained against her will."

The term "kidnap" is not defined by statute other than indicated by § 9514, which defines the crime of kidnapping. By subdivision 1 of said section, it is provided that every person who wilfully "Seizes, confines, inveigles or kidnaps another, with intent to cause him, without authority of law, to be secretly confined or imprisoned within this state, or to be sent out of this state, or in any way held to service or kept or detained against his will" is guilty of kidnapping. The argument on the specification that the evidence does not sustain the verdict makes reference to the fact that the information does not charge an intent on the part of the defendant to "secretly" detain this woman against her will. The defendant places emphasis on the omission of this term, and particularly, that the evidence fails to show an intent to detain the victim secretly.

No demurrer to the information was interposed, nor was there any objection made that "the facts stated do not constitute a public offense." At no time during the progress of the trial, or prior thereto, did the defendant object that the facts stated do not constitute a public offense.

At the close of the trial, the defendant moved the court to advise a verdict of not guilty "on the ground and for the reason that none of the elements of kidnapping have been established, the evidence being uncontradicted at the present time in this that there is not before this jury for its consideration any evidence of asportation, any evidence of duress. That there is no evidence offered by the state that any effort or action was taken by the defendant without authority of law to re-

quire the complaining witness to be kept or detained against her will."

No motion in arrest of judgment was made, and the record discloses no action on the part of the defendant expressly raising the question of the omission of the word "secretly."

The essential elements of § 9514, subd. 1, in harmony with the situation disclosed and required to be charged in order to find one guilty of kidnapping, are that a "person . . . wilfully . . . kidnaps another, with intent to cause him, without authority of law, to be . . . detained against his will," specifying victim, time and place. The term "secretly," as used in this subdivision hereinbefore quoted, refers to the words "confined or imprisoned within this state." The word does not apply to the subsequent clause, "detained against his will."

Where the crime is defined specifically by the statute, it is ordinarily sufficient to state it in the terms of the statute. See State v. Mott, 53 N. D. 222, 205 N. W. 234; State v. Climie, 12 N. D. 33, 94 N. W. 574. This rule applies to the definition of the crime of kidnapping. See People v. Bruno, 49 Cal. App. 372, 193 P. 511, where it is stated: "An information charging the offense of kidnapping in the language of . . . the Penal Code is sufficient, and it is not necessary to either allege or prove the intent and purpose of the defendant."

The gist of kidnapping is the intentional taking a person and compelling him to be detained against his will. It is not necessary to show any actual violence (State v. Rollins, 8 N. H. 550, 565); nor is the purpose material. People v. Fick, 89 Cal. 144, 150, 26 P. 759, 760. It is not necessary for the state to show that the defendant had an intent to injure; and where no circumstances are proven which would constitute a lawful excuse, no intent is necessary to be shown, except the intention of doing acts denounced by the statute. See People v. Sheasbey, 82 Cal. App. 459, 255 P. 836, 839; Lee v. People, 53 Colo. 507, 509, 127 P. 1023, 1024, Ann. Cas. 1914B 272.

The law denounces the wilful and unlawful detaining a person against his will, so "the motive or intent of the kidnapper is immaterial." See State v. Holland, 120 La. 429, 431, 45 So. 380, 381, 14 Ann. Cas. 692. See also People v. Bruno, 49 Cal. App. 372, 193 P. 511, supra, where the court holds it to be immaterial that the defendant took the victim without "intent of injuring her or her feelings, but solely

for the purpose of conversing with her, and under the belief, based on probable ground therefor, that such action would not be offensive to her or hurt her feelings." (Syllabus in Pacific Reporter.)

In State v. Autheman, 47 Idaho 328, 274 P. 805, 62 A.L.R. 195, the court is considering a statute which defines kidnapping, in one of its features, as seizing or taking a person "with intent to cause him, without authority of law, . . . to be held to service or kept or detained against his will;" and holds that "one who boards another's automobile and forces such other to drive him to such places as he desires, kidnaps such other within a statute defining kidnapping as the seizure of another with intent to cause him, without authority of law, to be held in service, or kept or detained against his will." (Syllabus in 62 A.L.R. 195.)

This holding is cited and approved in State v. Berry, 200 Wash. 495, 93 P. (2d) 782, 788, and in Norris v. State (Okla. Crim. Rep.) 96 P. (2d) 540, 545.

This feature of the Idaho case was essential for determination, though the prosecution was for second degree murder, as it was important to determine whether an officer was authorized to arrest without a warrant, he seeking a criminal who had so boarded a car. While the officer was holding the defendant under arrest, he was killed by the defendant.

The court held the officer to be justified in arresting without a warrant, because he was arresting the defendant for kidnapping, and the acts constituting the kidnapping are such as are indicated by the citations quoted. The case cited does not disclose what the nature or extent of the force used by the defendant was, but it shows the defendant entered the automobile and required the boy, who was driving the car, to take him some distance.

In the case at bar, the defendant boarded the automobile of the woman concerned and compelled her to drive him some distance. The fact that she did not drive him to the place he required, and that the witness Johnson prevented them from going further does not affect the general principle laid down. Where asportation is charged, the distance removed is not material so long as a person is taken away, being compelled to go. It is sufficient if there be an asportation of the vic-

tim. without any lawful authority, with intent of unlawfully imprisoning or secreting the victim. Keith v. State, 120 Fla. 847, 163 So. 136, 139.

In People v. Melendrez, 25 Cal. App. (2d) 490, 494, 77 P. (2d) 870, 872, it was held that a taking of a motorist from his automobile and holding him against his will at the point of a knife, at a short distance therefrom, is an act of kidnapping.

It is clear from the evidence that the defendant kidnapped this woman, put her under fear with the intent of detaining her against her will. His orders, his actions, his demeanor, his putting her in fear made her obedient to his will against her own wishes. He intended she should do what she did not want to do, and by his acts and words he intended to overawe her and constrain and compel her to do it. The method employed, if intended to accomplish the end, is immaterial. Indeed, fraud may be sufficient for that purpose, if the purpose be evil. See People v. De Leon, 109 N. Y. 226, 16 N. E. 46, 48, 4 Am. St. Rep. 444.

The fact that there was no physical violence offered, that the distance of asportation was slight, the time of detention was short, and no audible threats made, could be taken into consideration, and particularly by the court upon conviction, when the court was imposing the penalty.

The jury was justified on the evidence in finding that the defendant had kidnapped this woman with intent to cause her to be detained against her will.

The second point deals with the refusal of the court to submit to the jury defendant's plea of former jeopardy. This plea is based upon the fact that in the preceding September, three days after the kidnapping took place, the defendant entered a plea of guilty of the crime of carrying a concealed weapon, the weapon being this knife found upon his person by the policeman on the fifteenth of September, immediately upon his arrest.

The defendant asked the court to take judicial notice of the record in that case. The record was not offered in evidence, but the court did take judicial notice of it. The information in that case was for carrying concealed weapons.

In the case at bar, through some inadvertence, the term "once in jeopardy" has been confused with former conviction. The defendant was not formerly convicted of the charge set forth here. This is an entirely different case. True, the weapon was carried by him at the time of the kidnapping, and he entered his plea of guilty of carrying it as a concealed weapon on that same day. But it would not have been necessary to prove kidnapping in order to convict him of carrying this concealed weapon, and certainly, proof of carrying a concealed weapon would not of itself alone convict him of kidnapping.

The plea of once in jeopardy must be substantially as follows: "The defendant pleads that he has been once in jeopardy for the offense charged in this information . . . (specifying the time, place, and court)." Comp. Laws, § 10,747, subd. 4. The defendant must comply with the requirements of this statute. State v. Panchuk, 53 N. D. 669, 674, 207 N. W. 991, 993.

The plea of former jeopardy is to provide against a person being tried again for the same offense. Stroud v. United States, 251 U. S. 15, 18, 64 L. ed. 103, 110, 40 S. Ct. 50.

In State v. Rose, 89 Ohio State 383, 386, 106 N. E. 50, 51, L.R.A. 1915A 256, 262, it is stated, "The words 'same offense' mean same offense, not the same transaction, not the same acts, not the same circumstances or same situation." This case cited was a prosecution for rape, and the court continues, "There is but one offense that is the same offense as 'rape,' and that is 'rape.' "

As stated in State v. Panchuk, 53 N. D. 669, 207 N. W. 991, supra:

"It would seem that the act, on which the informations are based must be one and the same, and also, that the legal character of the crimes charged must be the same."

"A single act may constitute two or more distinct and separate offenses, and a person charged therewith may be convicted and punished for both." 15 Am. Jur. 63, Criminal Law, § 389.

Defendant urges that because such plea was interposed, it became the duty of the court to submit the issue to the jury; citing § 10,769, which provides that an issue of fact arises upon a plea of once in jeopardy, and § 10,770, which provides that issues of fact must be tried by a jury.

"Since a plea of former jeopardy sets up affirmative matter and is not a denial of any allegations of the indictment, the burden from the start is on the defendant, and if it is not proved by him, the issue must be answered in the negative." 14 Am. Jur. 959, Criminal Law, § 283.

"If no evidence is adduced on the trial in support of the plea, it is not the duty of the court to submit the plea to the jury." 14 Am. Jur. 960, Criminal Law, § 284.

The plea as entered did not conform to the requirements of the statute. It did not show place or court, and the crime stated therein is not the one charged in the information in this case. The record of which the court was asked to take judicial notice, and did take judicial notice, in no way aids the defendant on this alleged plea. The action of the court was right.

The third issue deals with the sentence imposed. Section 9514, defining the crime of kidnapping, provides that upon conviction, the defendant "is punishable by imprisonment in the penitentiary not less than five nor more than twenty years."

The court imposed a penalty of fifteen years' imprisonment. It was the duty of the trial court to determine the punishment within the limitations fixed by statute; and when the court imposes imprisonment in the penitentiary for a period within these limitations, this court has no power to review the discretion of the court in fixing the terms of imprisonment.

As pointed out in State v. Jochim, 55 N. D. 313, 321, 213 N. W. 484, 487, "an exercise of judgment within the limitations fixed by statute is not a judicial error."

The judgment of the lower court is affirmed.

NUESSLE, Ch. J., and CHRISTIANSON, MORRIS, and BURKE, JJ., concur.