**STATE of North Dakota, Respondent,**

v.

**Carl NIERENBERG, Appellant.**

No. 273.

Supreme Court of North Dakota.

Dec. 28, 1956.

L. A. W. Stephan, Valley City, for defendant and appellant.

Leslie R. Burgum, Atty. Gen., M. W. Duffy, State's Atty., Cooperstown, for plaintiff and respondent.

SATHRE, Judge.

This is a criminal action. The defendant was charged with the crime of perjury in the district court of Griggs County, North Dakota, and convicted by a jury. On November 8, 1955 he was sentenced to a term of from one to three years in the state penitentiary.

The conviction of the defendant grew out of the following facts and circumstances.

In December 1954 the defendant was charged in the district court of Griggs County, North Dakota with the crime of driving a motor vehicle while intoxicated and acquitted by a jury. The information in the instant case charges the defendant with having committed perjury while testifying in his own behalf in the drunken driving case in which he was acquitted.

The substance of the testimony of the defendant in the drunken driving case is as follows:

On the afternoon of June 12, 1954 he was in the city of Cooperstown where he lived with his mother. In the afternoon of that day he had one glass of beer and one drink of whiskey. About 6:30 o'clock in the evening of that day he drove from down town to his home. He then got out of his car and went behind the house where he drank some liquor during a period of about half an hour. After that he went into the house. He then noticed that the sheriff and a patrolman were examining his car with a flash light and then they came into the house and arrested him and put him in jail.

The sheriff testified that about 8:00 o'clock in the evening of June 12, 1954 as he was leaving the court house he noticed the defendant driving his car and that he was weaving back and forth over the road.

He then made a U turn and followed the defendant to the latter's home and as soon as the defendant got out of his car he arrested him and took him to the court house and put him in jail. He then drove to the house of one of the patrolmen, a Mr. Hendrickson, and together they went back to the jail and asked the defendant if he wanted a blood test but he refused. They found that the defendant was intoxicated, that he was confused, could not find his cap, and showed the general effects of intoxication. The defendant admits that he was intoxicated when, as he said, the sheriff and patrolman came into his house and arrested him but he denies that he was arrested by the sheriff when he stepped out of his car. His story is that they put him in the sheriff's car and took him to jail. The sheriff testified that the defendant and he walked to the jail. The testimony taken at the trial of the drunken driving case was transcribed by a reporter and is an exhibit in this case. The date of his arrest in the drunken driving case was June 12, 1954. The trial was held in December 1954.

On the trial of the perjury charge the defendant was not so positive as to whether or not the sheriff was alone when he arrested him or whether he had the patrolman with him. He did maintain however that he was arrested in his house and that the sheriff came into the house, and defendant's recollection was that the patrolman was with him; that they took him to the court house in the sheriff's car and put him in jail. The testimony of the sheriff at the trial of the perjury charge was practically identical with his testimony on the trial in the drunken driving case. He testified further that his wife and children were with him in the car when he first observed the defendant driving on the evening of June 12th. The sheriff left his wife and children in his car and when the defendant stepped out of his car he arrested him and walked him to the jail.

At the close of the testimony of the state, and again after both sides had rested in

the perjury case, the defendant made the following motion for dismissal:

"The state having rested, at this time the defendant moves for a dismissal of the complaint, on the grounds that the state has not established a prima facie case; that the evidence in this case is the same evidence as on a prior case of the State of North Dakota v. Carl Nierenberg on a drunken driving charge, on which charge the defendant was acquitted, and in which case the main issue was as to whether or not the defendant operated his motor vehicle while intoxicated at a certain time and place in Cooperstown. This case is substantially the same case, the same parties, and the same issues. And the acquittal on the charge of drunken driving is a bar to the complaint and charges brought against this defendant on the perjury charge, based on the testimony which took place on the drunken driving charge. The defendant moves that the complaint on the perjury charge be dismissed against this defendant."

The motion was denied.

Thereafter the defendant made a motion for a new trial upon the following grounds:

1. Errors in Law Occurring at the Trial; all as more fully set out in the specifications of errors of law hereto attached. That the motion is made upon the settled statement of the case and upon all the files and records therein.

The motion was denied.

Judgment was entered upon the verdict of the jury. Thereafter the defendant appealed to the Supreme Court from the judgment of conviction and from the order denying defendant's motion for a new trial.

The specifications of error are as follows:

1. The court erred in denying the defendant's motion for dismissal at the close of the state's case.

2. The court erred in denying defendant's motion for dismissal at the close of all of the testimony.

3. The court erred in excluding testimony of Frank Baker offered by the defendant.

There is no specification of insufficiency of the evidence to support the verdict of the jury. The only questions for consideration are therefore the questions of law.

It is the contention of the defendant that the issues in the instant case are identical with the issues in the case in which he was charged with operating a motor vehicle while intoxicated and in which he was acquitted; that he is entitled to a dismissal of the action on the grounds of res judicata and former jeopardy for the same offense.

The first two specifications present the same legal question and may be considered together.

The defendant was tried on the charge of operating a motor vehicle while under the influence of intoxicating liquor in December 1954 and was acquitted. The principal witnesses against him in the first case were the sheriff and the highway patrolman, Hendrickson. They gave practically the same testimony in the perjury case. The state called four witnesses who sustained the testimony of the sheriff and the highway patrolman.

The defendant argues that the issues in both cases are identical; that the parties are the same and that his acquittal in the first case was res judicata and a bar to prosecution for perjury in the instant case, because the jury that acquitted him must have believed that his testimony was true, and that the prosecution for perjury put him in jeopardy and on trial a second time

for the same offense. In other words he argues that he could not be convicted of perjury in swearing to the state of facts which a jury in another case against him had found to be true. In support of his contention he cites the case of Allen v. United States, 4 Cir., 194 F. 664, 667, 114 C.C.A. 357, 39 L.R.A.,N.S., 385, in which it is stated:

"It is very hard to imagine any state of things which would justify an indictment for perjury of an acquitted defendant against whom the government offers no other substantial evidence than that which had been before the jury which has found him not guilty. The government and its prosecuting officers should not discredit the verdicts and judgments of its own courts by seeking to induce one jury to find that another gave a wrong verdict upon what is in all material respects the same testimony.".

However, the overwhelming weight of judicial decisions is contrary to the views expressed in Allen v. U. S., supra.

█ In the first prosecution in which the defendant was acquitted he was charged with driving a motor vehicle while intoxicated; in the instant case he was charged with perjury and convicted. The two offenses with which he was charged are different and separate crimes. In 70 C.J.S., Perjury, § 26, page 492, it is stated:

"The general rule is that acquittal or conviction in the cause in which false testimony was given does not bar subsequent prosecution for perjury, offering false evidence, preparing false evidence, or false swearing. Such prior acquittal is regarded as establishing neither the defense of former jeopardy nor that of res judicata. To hold otherwise, it has been held, would be to put a premium on perjury and to make immunity from punishment for perjury rest on success in commission of the crime. Some authorities hold

the rule applicable, even though conviction of perjury necessarily involves a flat contradiction of the prior verdict of acquittal. Other authorities while admitting that double jeopardy is not involved, hold that prior acquittal bars a subsequent conviction of perjury based on a direct contradiction of the prior verdict, or that where the fact testified to and as to which the perjury is charged was the act constituting the basis of the crime charged, and this fact was necessarily determinative of the issue, and acquittal of the first offense bars a prosecution for perjury.

"Irrespective of this conflict the authorities agree that a prior acquittal is no bar to a subsequent prosecution for perjury where the alleged false testimony relates to matters collateral or subordinate to the main issue of guilt or innocence, and its falsity is not necessarily inconsistent with accused's innocence of the former crime, or where the charge of perjury is not necessarily based on the assumption that defendant is guilty of the crime of which he was acquitted, and particularly where additional testimony of a substantial character is offered in the perjury case."

In the case of People v. Housman, 44 Cal.App.2d 619, 112 P.2d 944, 947, it was held that acquittal of defendant in prosecution for failure to keep records required by the state Narcotic Act was not res judicata in prosecution for perjury, offering false evidence and preparing false evidence in connection with a former prosecution. In the opinion in said case it was stated:

" 'The general proposition that one can escape punishment for perjury because he succeeded in inducing a jury to credit his false testimony is supported neither by authority nor by reason. If he could, then it follows that the law encourages parties—particularly defendants in criminal cases —to perjure themselves. We must de-

clare that the law is guilty of no such folly. An accused's immunity from punishment for crime must not be made to depend upon the accomplishment of his acquittal in one prosecution by committing the crime for which he claims immunity. It is furthermore the policy of the law that judicial proceedings and judgments shall be fair and free from fraud, and that litigants and parties be encouraged, when sworn as witnesses, to tell the truth, and that they be punished if they do not. The authorities seem now to be unanimous in holding that an acquittal of one charged with crime is no bar to a prosecution for perjury for false testimony given by him at the trial. (Citing numerous cases.)'"

In the case of State v. Leonard, 236 N. C. 126, 72 S.E.2d 1, 2; Leonard v. State, 344 U.S. 916, 73 S.Ct. 339, 97 L.Ed. 706, the Supreme Court of North Carolina had before it for consideration the following question:

"Is the defendant, who has been acquitted by a jury of the charge of malicious injury to personal property, entitled to plead former jeopardy or res judicata as a defense to a charge of perjury alleged to have been committed by him at the former trial."

In the course of its opinion that court said:

"The charge of perjury upon which defendant was convicted is not necessarily based upon the assumption that he was guilty of the charge of malicious injury to personal property. His acquittal upon that charge does not necessarily establish the fact that all material evidence given by him in that case was true. 147 A.L.R. 1000, 1001, and cases there cited. A verdict of acquittal is not a finding by the jury that the defendant's evidence was true. It is merely a declaration that the jury upon all the evidence is not satisfied beyond a reasonable doubt of defendant's guilt. Therefore, we cannot hold that a verdict of acquittal is equivalent to an affirmative finding that all of defendant's testimony at the former trial was true. Surely, the law should not permit a defendant by his own perjured testimony to secure a verdict in his favor, with immunity from a charge of perjury, while other witnesses testifying in his defense would be subject to conviction and punishment for false swearing. Such a doctrine would place a premium upon perjury and a penalty upon probity.

"Public policy recognizes the principle of res judicata in criminal cases, but at the same time it requires that perjurers be brought to trial and punished. To hold that a person could go into court of justice and by perjured testimony secure an acquittal and by that acquittal be shielded from a charge of perjury would be a dangerous doctrine. Slayton v. Commonwealth, supra [185 Va. 371, 38 S.E.2d 485]; Jay v. State, supra [15 Ala.App. 255, 73 So. 137]; Yarbrough v. State, 79 Fla. 256, 83 So. 873."

We are in accord with the policy of the law as above set forth in the cases cited and we think it has application to the issues involved in the instant case. We conclude upon the record before us that defendant's pleas of former jeopardy and res judicata cannot be sustained.

 The final specification of error is that the trial court erred in excluding the testimony of the witness Frank Baker offered by the defendant. The witness was asked the following questions by counsel for defendant as follows:

"Q. You say you have known Mr. Nierenberg for about 30 years? A. Yes.

"Q. During that period of time he has lived in the same community you

have lived in? A. Well, farmed out west here for awhile and then come to town here.

"Q. During that period of time have you discussed with others or heard discussion as to Mr. Nierenberg's reputation for being a truthful man?·

"Mr. Duffy: We object to this as being irrelevant and immaterial."

"The Court: Objection will be sustained."

The witness should have been permitted to answer the question whether during the time he had known defendant he had discussed with others or heard discussions as to Mr. Nierenberg's reputation for being a truthful man. His answer would have determined whether he was qualified to testify as to defendant's general reputation. It was error on the part of the trial court to exclude the answer. However no offer of proof of testimony was made by the defendant and the court's ruling, although erroneous, was without prejudice.

The witness Baker testified in the former case in which the defendant was charged with driving a motor vehicle while under the influence of intoxicating liquor. The testimony in that case was transcribed and admitted in evidence in the instant case as state's Exhibit 2. In that case he testified as follows as to the reputation of the defendant:

"Q. Mr. Baker did you know his general reputation? Will you please say yes or no. A. Yes.

"Mr. Duffy: If it pleases the court I would like to ask a question to lay a foundation for an objection.

"The Court: All right.

"Mr. Duffy: Q. Mr. Baker, did you in your presence hear anybody discuss the matter of the defendant's truth and veracity? A. I can't understand that.

"Q. Did you ever hear anybody mention the question of the defendant's truth and veracity? A. No, I haven't.

"Q. Or the reasonable general reputation so far as you know. A. Well, his general reputation so far as I know is—

"Q. Well, if you never heard anybody discuss it, how do you know what his general reputation is? A. Not anymore than just what I know.

"Q. Well, you may have your own opinion, but the question is here, 'what is his general reputation,' and if you never heard anybody discuss it then you don't know anything about it. A. No. No. I wouldn't.

"Mr. Duffy: We object to the question as incompetent.

"The Court: Sustained.

"Mr. Stephan: That is all."

No further questions were asked of this witness by counsel for the defendant. He made no offer of proof that the witness knew the general reputation of the defendant and it is apparent from his testimony above quoted that he did not know the defendant's general reputation in his community. The court's ruling, while erroneous, was therefore harmless error.

While no specification of error was made on the ground of insufficiency of the evidence, we have nevertheless examined the same and we conclude that it is sufficient to support the verdict.

Finding no reversible error in the record the judgment of the district court is affirmed.

BURKE, C. J., and MORRIS, JOHNSON and GRIMSON, JJ., concur.