**STATE of North Dakota, Plaintiff and Appellant,**

v.

**Bruce C. JACOBSON, Defendant and Appellee,**

**STATE of North Dakota, Plaintiff and Appellant,**

v.

**Sheila Ann BARNES, Defendant and Appellee.**

**Criminal Nos. 950259, 950302.**

Supreme Court of North Dakota.

March 15, 1996.

John E. Greenwood, State's Attorney, Jamestown, for plaintiffs and appellants.

Michael R. Hoffman, Bismarck, for defendants and appellees.

NEUMANN, Justice.

Consolidated for oral argument and disposition, these cases raise the question whether the double jeopardy clause in North Dakota's state constitution and section 29–01–07 of the North Dakota Century Code require an interpretation different than the double jeopardy clause in the federal constitution for a

DUI arrestee faced with an administrative license suspension and a criminal conviction. In each case, the district court ruled a criminal prosecution subsequent to an administrative suspension would place the defendants in double jeopardy in violation of federal and state constitutional law, and granted the defendants' motions to dismiss. We reverse.

Defendants Jacobson and Barnes were charged with driving under the influence of alcohol. Following an administrative hearing, their drivers' licenses were suspended. Criminal charges ensued, and both defendants filed pre-trial motions to dismiss the charges based on double jeopardy grounds. They argued a criminal conviction and an administrative license suspension constitute multiple punishments for the same offense and thus violate, first, North Dakota statutory and constitutional law and, second, federal constitutional law.

This court's decision in *State v. Zimmerman*, 539 N.W.2d 49 (N.D.1995), disposes of the defendants' federal constitutional law argument. In *Zimmerman*, we addressed squarely the question whether, under the United States Constitution, a criminal prosecution for DUI constitutes double jeopardy when the defendant's driver's license previously had been suspended in an administrative hearing for the same DUI offense. We answered no.

Counsel for defendants also advanced a state statutory and constitutional law argument, urging this court to interpret punishment for purposes of double jeopardy analysis under North Dakota statutory and constitutional law different than under federal constitutional law. We decline the urging to overrule settled law. We adhere to this court's ruling in *State v. Allesi*, 216 N.W.2d 805 (N.D.1974) and, more recently, in *City of Fargo v. Hector*, 534 N.W.2d 821 (N.D.1995). Citing *Allesi*, we stated in *Hector* that "[t]he framers of our state constitution and the legislature in enacting [section 29–01–07] did not intend an interpretation different than the Double Jeopardy Clause of the United States Constitu-

tion." 534 N.W.2d at 823 (citing *Allesi*, 216 N.W.2d at 817–18).

Reversed.

SANDSTROM, J., concurs.

VANDE WALLE, Chief Justice, concurring specially.

I agree with Justice Levine's well-chronicled dissent to the extent that it demonstrates it is improvident to hold that a North Dakota constitutional provision will always be construed the same as a similar provision in the United States Constitution, or, for that matter, will always be construed differently than a similar provision in the United States Constitution. *C.f. City of Grand Forks v. Grand Forks Herald*, 307 N.W.2d 572, 579 (N.D.1981 VandeWalle, J., concurring specially) [Right of privacy under N.D. Constitution in personnel information in records of public agency not affecting operation of that agency not foreclosed by majority decision that no such rights exist in municipal personnel files]. *State v. Allesi*, 216 N.W.2d 805 (N.D.1974), which appeared to adopt such a conclusive approach, recognized in Syllabus 8 by the Court that "[e]ach case in which a double-jeopardy violation is asserted must turn on its own facts." Significantly, the United States Supreme Court has not yet decided the precise question we here consider although several State appellate courts have considered the issue under the Federal Constitution. *State v. Zimmerman*, 539 N.W.2d 49 (N.D.1995). Therefore, we can only predict what the Federal Constitution protection provides; we cannot adopt a construction not yet announced.

It is one thing to conclude that the framers of the North Dakota Constitution intended nothing more or nothing less [as noted by Justice Levine the first Ten Amendments had not yet been made applicable to the States in 1889, so "less" was a possible intent] than the construction intended by the framers of the United States Constitution when that construction has been announced by the United States Supreme Court. It is something else to "buy-in," in 1974 or now, to a future and as yet unannounced construction. To analogize to rules of statutory con-

struction, when a statute is adopted from another State it is presumed the Legislature adopted the construction previously placed upon it by the courts of the State from which the statute was taken. *E.g., State v. Dilger,* 322 N.W.2d 461 (N.D.1982). No such presumption exists when the interpretation and construction by the courts do not precede the adoption of the statute. *E.g., State v. Wells,* 276 N.W.2d 679 (N.D.1979), cert. denied, 442 U.S. 932, 99 S.Ct. 2865, 61 L.Ed.2d 300 (1979).

However, I do not agree with Justice Levine's conclusion that administrative sanctions are punitive. I adhere to the analysis in *Zimmerman* that administrative suspension of the license is remedial. The same "realistic" look that the dissent takes, i.e., lack of access to mass transit from the standpoint of the individual and the "punishment" imposed by license revocation, is equally true of the remedial nature of the remedy. The lack of mass transit makes it necessary for a greater proportion of our citizens to use the roads and highways; thus it is also necessary to attempt to assure the safety of those roads and highways for that greater proportion. The remedial purpose of removing drunk drivers from the roads, which such a great proportion of our citizens must use because of the lack of mass transit, therefore dominates.

To hold it is a double-jeopardy violation for the imposition of administrative remedies when there is a criminal prosecution would be a substantial change in this State's legal history. It is a change that, under these facts, I believe is unwarranted and uncalled for by the North Dakota Constitution. The consequences of that holding clearly indicate to me there could have been no such intent by the framers of our Constitution. For example, I expect the framers would be startled, indeed, to learn that a license authorized by the Legislature could not be revoked by the licensing authority when the holder is convicted of a crime because it would violate the prohibition against double jeopardy; or, for another example, that a public school district, a government entity, could not suspend from its basketball team, a student convicted of driving while intoxicated because

it would constitute double jeopardy. The dissent looks "realistically" at what suspension of a license to drive means. We should also look "realistically" at what the framers intended to prevent by the prohibition against double jeopardy. That look convinces me the suspension of the license to drive of a convicted drunk driver for the safety of the public was not what they intended to prevent.

MESCHKE, Justice, concurring.

While I agree with much of Justice Levine's dissent, I remain persuaded that *State v. Zimmerman,* 539 N.W.2d 49 (N.D.1995), was correctly decided. That precedent compels reversal here. Under either the United States Constitution or the North Dakota Constitution, I continue to believe the temporary loss of the driving privilege is mainly remedial for the good of the traveling public, not mainly punishment so that a later criminal prosecution might violate either constitutional prohibition against multiple prosecutions.

Particularly, I share Justice Levine's view of appellees' arguments as "thoughtful." I would add that they display exemplary advocacy!

I join in Justice Levine's conclusion that *Allesi's* unstudied pronouncement, that what is present Art. I, § 12 of the North Dakota Constitution intended the same result "mandated by the Fifth Amendment to the United States Constitution," was demonstrably "unsupported by authority or reasoning, and it deserves no further adherence." I therefore agree with her valedictory view that "our legislature has provided our citizens more double jeopardy protection than granted by the federal constitution," and that we should interpret our North Dakota Constitution's Double Jeopardy Clause independently. But I do not agree that compels a different result in this case.

A temporary forfeiture of the privilege to drive on public highways cannot be mainly punishment that triggers double jeopardy protection. Still, it remains to be determined to what extent forfeiture of substantial money or physical property, as a penalty for criminal conduct, may be punishment that

triggers double jeopardy protection under the North Dakota Constitution or the United States Constitution. *See United States v. Ursery,* 59 F.3d 568 (6th Cir.1995), *cert. granted,* —— U.S. ——, 116 S.Ct. 762, 133 L.Ed.2d 707 (1996); *United States v. $405,-089.23 U.S. Currency,* 33 F.3d 1210 (9th Cir. 1994), *cert. granted,* —— U.S. ——, 116 S.Ct. 762, 133 L.Ed.2d 707 (1996). *Compare Bennis v. Michigan,* —— U.S. ——, 116 S.Ct. 994, 134 L.Ed.2d 68 (1996) (5–4 decision that forfeiture of innocent co-owners interest in auto used by spouse in sexual activity with a prostitute does not offend Due Process Clause or Takings Clause). When we too confront those complex questions, I believe that Justice Levine's separate opinion in this case may very well play an important part in our deliberations.

SANDSTROM, Justice, concurring.

"The framers of North Dakota's Constitution must have intended more protection under the state double jeopardy clause than that of the United States Constitution, because otherwise the state provision is a meaningless redundancy." So goes the argument. What the argument lacks is historical perspective.

From its adoption, the double jeopardy clause of the United States Constitution was considered a limitation only on the federal government. As recently as 1937, the United States Supreme Court, in *Palko v. Connecticut,* 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937), held that the federal double jeopardy provisions did not apply to the states. It was not until *1969* that the United States Supreme Court, in *Benton v. Maryland,* 395 U.S. 784, 794, 89 S.Ct. 2056, 2062, 23 L.Ed.2d 707 (1969) held:

> "[W]e today find that the double jeopardy prohibition of the Fifth Amendment represents a fundamental ideal in our constitutional heritage, and that it should apply to the States through the Fourteenth Amendment."

When the framers of North Dakota's Constitution included a double jeopardy clause, they were prohibiting the state from doing what the federal government was prohibited from doing. In view of then current federal constitutional jurisprudence, our framers were providing a real protection that would have been lacking.

A review of the entire proceedings of our State Constitutional Convention offers not one word of support for the concept that the framers intended to do anything other than prohibit the state from doing what the federal government was prohibited from doing. Official Report of the Proceedings and Debates of the First Constitutional Convention of North Dakota (1889); Journal of the Constitutional Convention for North Dakota (1889).

The concept that double jeopardy could extend to anything other than multiple *criminal* cases or prosecutions did not take hold until the second half of this century. *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989); *Austin v. United States,* 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993); *Department of Revenue of Montana v. Kurth Ranch,* —— U.S. ——, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994). Those very narrowly expanded concepts were discussed and analyzed in *State v. Zimmerman,* 539 N.W.2d 49 (N.D.1995).

The defendants refer us to Meschke and Spears, *Digging for Roots: The North Dakota Constitution and the Thayer Correspondence,* 65 N.D.L.Rev. 343 (1989), and *Model Constitution (Peddrick Draft # 2, 1889),* 65 N.D.L.Rev. 415 (1989). The "Authorities" section of the Peddrick Draft # 2 reflects that, while other provisions have their origins in provisions of other specific state constitutions, our state double jeopardy provision's origin was "Constitutions generally." 65 N.D.L.Rev. at 480. There is nothing in our constitutional records or the jurisprudence of the time to support the defendants' urged construction of our state double jeopardy clause.

Meschke and Spears suggest, "The well-reasoned construction of a like constitutional provision by another state is highly persuasive." 65 N.D.L.Rev. at 381. No state has interpreted its state double jeopardy provision to apply to criminal DUI prosecution following administrative license suspension.

Finally, I feel compelled to note the second half of Representative Patrick Conmy's famous quotation, quoted in part by Justice Levine, which suggests a remedial purpose: "If all else fails, slash their tires." S.B. 2373, Conference Committee Minutes, April 7, 1983. Perhaps that would better protect the public from those who believe they have a "constitutional right" to drive drunk.

LEVINE, Surrogate Judge, dissenting.

I dissent from the majority's decision because I am persuaded that the prosecution of an alleged drunk driver following the driver's administrative license suspension is double punishment and a violation of the Double Jeopardy Clause of Article I, section 12 of the North Dakota Constitution.

Over twenty years ago in *State v. Allesi,* 216 N.W.2d 805 (N.D.1974), this court summarily rejected the call to interpret the North Dakota Constitution's Double Jeopardy Clause independently from the federal constitution's Double Jeopardy Clause. Until now, the briefs submitted for overruling *Allesi* have been as summary and unpersuasive as the *Allesi* analysis itself. Brief after brief failed to argue the state constitutional law issue coherently or persuasively.[1] *See, e.g.,* Appellant's Brief, *State v. Zimmerman,* 539 N.W.2d 49 (N.D.1995) (Crim. No. 950163). This case, however, is different, dramatically so. The defendants' arguments are compelling and thoughtful. They convince me that the time has come for us to abandon *Allesi* and exercise our duty to independently interpret our state constitution's double jeopardy provision. *See State v. Ringquist,* 433 N.W.2d 207 (N.D.1988) (Levine, J., concurring and dissenting); *see also Abbey v. State,* 202 N.W.2d 844, 852 (N.D. 1972) (quoting *Otter Tail Power Co. v. Von Bank,* 72 N.D. 497, 8 N.W.2d 599 (1942))

[" 'The rule of *stare decisis* . . . is not sacrosanct.' "]; *Patterson v. McLean Credit Union,* 491 U.S. 164, 172, 109 S.Ct. 2363, 2370, 105 L.Ed.2d 132 (1989) ["Our precedents are not sacrosanct. . . ."]; *Williams v. Florida,* 399 U.S. 78, 128, 90 S.Ct. 1893, 1920, 26 L.Ed.2d 446 (1970) (Harlan, J., concurring and dissenting) [*Stare decisis* "[w]oodenly applied . . . builds a stockade of precedent that confines the law. . . ."]; *Helvering v. Hallock,* 309 U.S. 106, 119, 60 S.Ct. 444, 451, 84 L.Ed. 604 (1940) ["[S]*tare decisis* is a principle of policy and not a mechanical formula of adherence to the latest decision. . . ."].

In rejecting the possibility that our constitution provides more double jeopardy protection than the federal constitution, the *Allesi* court said:

"Although they had the power to do so, we do not believe that the framers of the North Dakota Constitution who created Section 13 or the members of the Legislature who drafted Section 29–01–07 or its predecessor section intended a result different from that mandated by the Fifth Amendment to the United States Constitution." *Allesi,* 216 N.W.2d at 817–18.

In one fell swoop, one terse statement, our court reduced the North Dakota Constitution to an echo of the federal constitution, and did it less than two months after it decided in *State v. Matthews,* 216 N.W.2d 90, 99 (N.D. 1974), that "[i]t is within the power of this court to apply higher constitutional standards than are required of the States by the Federal Constitution." In effect, the *Allesi* court decided, because the framers and the legislature did not explicitly state that our constitutional and statutory double jeopardy protections could be given broader effect than those in the federal constitution, we could not exercise our power to "apply higher

---

1. Recent briefs on this issue, however, are no worse than the briefs for *Allesi* itself. Allesi was charged with delivering a controlled substance, but the trial court dismissed the charges against him on his motion after the state had presented its case. *State v. Allesi,* 216 N.W.2d 805 (N.D. 1974). The state appealed, seeking a retrial. *Id.* at 807–08. Allesi responded that he would be subjected to double jeopardy on retrial. *Id.* at 812. Allesi presented a slender double jeopardy argument backed by minimalist authority:

quotes from the federal and state constitutions; citations to two federal cases; and quotes from two state cases. Appellee's Brief, *Allesi,* 216 N.W.2d at 807 (Crim. No. 456). Allesi's authority, state and federal, stood for the proposition that jeopardy attaches once a jury is impaneled and sworn. *Id.* Allesi did not argue that the state constitution should provide any more protection than the federal constitution in this area. *Id.*

constitutional standards." The *Allesi* decision was unsupported by authority or reasoning, and it deserves no further adherence.

Our constitution can and has given our citizens greater protection than the federal constitution. In *Matthews*, 216 N.W.2d at 99, it bestowed broader standing to challenge illegal searches. So, too, has it granted broader protections in other areas. *See Grand Forks–Traill Water Users v. Hjelle*, 413 N.W.2d 344 (N.D.1987) [protection from takings for public use]; *State v. Orr*, 375 N.W.2d 171 (N.D.1985) [right to counsel]; *City of Bismarck v. Altevogt*, 353 N.W.2d 760 (N.D.1984) [jury trial rights]; *State v. Nordquist*, 309 N.W.2d 109 (N.D.1981) [grand jury protections]; *State v. Lewis*, 291 N.W.2d 735 (N.D.1980) [right to appeal]; *State v. Stockert*, 245 N.W.2d 266 (N.D.1976) [protection from illegal searches]; *Johnson v. Hassett*, 217 N.W.2d 771 (N.D.1974) [right to uniform application of laws]. While it may have been a novel idea at the time of the *Allesi* decision, it is clear today that "our North Dakota Constitution may afford broader rights than those granted under an equivalent provision of the federal constitution." *Matter of Adoption of K.A.S.*, 499 N.W.2d 558, 563 (N.D. 1993).

The *Allesi* court said, before demoting our state double jeopardy provision to a mere reverberation of its federal counterpart, "that Section 29–01–07, N.D.C.C., and Section 13 of the North Dakota Constitution must be read in the light of history." *Allesi*, 216 N.W.2d at 817. Having said this, however, the *Allesi* court jumped to its doubtful conclusion without examining the history of North Dakota's double jeopardy protection.

The delegates to the North Dakota Constitutional Convention did not use the federal constitution as a model in formulating our state constitution. *See* Hon. Robert Vogel, *Sources of the 1889 North Dakota Constitution*, 65 N.D.L.Rev. 331 (1989). Instead, the South Dakota Constitution and the "Williams Constitution" were the key documents looked to by the delegates. *Id.* at 332; *see also* Hon. Herbert L. Meschke & Lawrence D. Spears, *Digging for Roots: The North Dakota Constitution and the Thayer Correspondence*, 65 N.D.L.Rev. 343 (1989) [exploring the history of the "Williams Constitution"]. The "Williams Constitution" provided that "[n]o person shall for the same offense be twice put in jeopardy of his life or liberty." Journal of the Constitutional Convention for North Dakota 68 (1889). The South Dakota Constitution provided, and still provides, that "[n]o person shall ... be twice put in jeopardy for the same offense." S.D. Const. art. VI, § 9. There is no indication in the constitutional convention's journal or official report that there was any substantial debate on the double jeopardy provision. The convention ultimately adopted double jeopardy language identical to South Dakota's, and this language remains part of our constitution today. *See* N.D. Const. art. I, § 12.

While our constitution's double jeopardy provision is similar in language to the federal constitution, that is a characteristic we share with other states that maintain constitutional protections against double jeopardy. *See* Jennifer Friesen, *State Constitutional Law: Litigating Individual Rights, Claims and Defenses* ¶ 12.07 at 12–47 (1995) [hereinafter Friesen]. In *State v. Kennedy*, 295 Or. 260, 666 P.2d 1316, 1322 (1983), the Oregon Supreme Court explained why it makes sense for a state court to interpret even "substantially identical" language in a state constitution independently from the federal courts' interpretation of the federal constitution. Similarity of language between federal and state constitutions may show a similarity of purpose, but it does not follow that "the United States Supreme Court's decisions under such a text not only deserve respect but presumptively fix its correct meaning also in state constitutions." *Id.* at 1322.

Our history reveals little reason why we should be bound by the federal constitution in interpreting our constitution's double jeopardy provision, and no basis for the *Allesi* court's conclusion that the framers would have wanted the provision to mimic the federal constitution. If anything, history points us to South Dakota for guidance. While South Dakota generally interprets its own Double Jeopardy Clause to provide the same protections as the federal Double Jeopardy Clause, *see, e.g., Weiker v. Solem*, 515 N.W.2d 827 (S.D.1994), it has considered

double jeopardy questions without reference to the federal constitution. *See State v. Pickering*, 225 N.W.2d 98 (S.D.1975). The South Dakota Supreme Court has "always assumed the independent nature of [its] state constitution regardless of any similarity between the language of that document and the federal constitution." *State v. Opperman*, 247 N.W.2d 673, 674 (S.D.1976). And so should we!

The history of our statutory law also shows that our legislature implemented Article I, section 12 in a pattern that manifested a special concern for guarding against double jeopardy. We recognized in *Orr*, 375 N.W.2d at 177, that legislative action to "zealously" guard a right illustrates the special significance that right enjoys in our state. *See also State v. Hunt*, 91 N.J. 338, 450 A.2d 952 (1982) [a divergent interpretation of the state and federal constitutions is justified when the state's public policy favors protection of certain interests]. Many sections of our code provide protection against double jeopardy. *See* NDCC §§ 29–01–07 [allowing only one prosecution]; 29–01–18 [making order to stay a bar to prosecution]; 29–21–10 [indicating when discharge of defendant is bar to further prosecution]; 29–22–35 [barring prosecution of defendant for lesser offense after acquittal or conviction on higher degree of offense]. For example, our legislature has promulgated statutes prohibiting dual sovereign prosecutions. *See* NDCC §§ 29–03–13 [barring prosecution after conviction or acquittal in another state]; 29–03–14 [barring prosecution after conviction or acquittal in another county] 19–03.1–28 [barring prosecution under Uniform Controlled Substances Act following conviction or acquittal in another jurisdiction for same act]. Through these statutes, our legislature has provided our citizens more double jeopardy protection than granted by the federal constitution, *see Bartkus v. Illinois*, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959) [holding dual sovereign prosecutions constitutional], and has shown its intent to zealously guard the rights of our citizens in this area.

Furthermore, while section 19–03.1–28 has only been a part of our law for twenty-five years, *see* 1971 N.D.Laws, ch. 235, § 28,

many of our double jeopardy statutes trace their lineage to territorial law. *See, e.g.,* NDCC § 29–01–07 [drawn from 1877 Dakota Code of Criminal Procedure § 12]. The longtime and continuous existence of statutory protections against double jeopardy manifests a clear legislative intent to zealously guard our citizens' rights in this area and bolsters a constitutional interpretation that is coherent with that intent. *See State v. City of Sherwood*, 489 N.W.2d 584, 587 (N.D.1992) ["A contemporaneous and longstanding legislative construction of a constitutional provision is entitled to significant weight when we interpret the provision."]; *State v. Blaisdell et al.*, 18 N.D. 31, 38–39, 119 N.W. 360 (1909) [legislative construction that "has been followed by a harmonious and constant course of subsequent legislation which has been in effect and acted upon for a period of years . . . is entitled to great weight in determining the real intent and purpose of constitutional provisions and requirements."].

· The history of this court's double jeopardy jurisprudence also shows that, until *Allesi*, we interpreted our state's double jeopardy provisions independently and without reliance on federal constitutional interpretations. *See State v. Hazledahl*, 2 N.D. 521, 52 N.W. 315 (1892); *State v. Bronkol*, 5 N.D. 507, 67 N.W. 680 (1896); *State v. Virgo*, 14 N.D. 293, 103 N.W. 610 (1905); *State v. Lesh*, 27 N.D. 165, 145 N.W. 829 (1914); *State v. Panchuk*, 53 N.D. 669, 207 N.W. 991 (1926); *State v. Tucker*, 58 N.D. 82, 224 N.W. 878 (1929); *State v. Noel*, 66 N.D. 676, 268 N.W. 654 (1936); *Ryan v. Nygaard*, 70 N.D. 687, 297 N.W. 694 (1941); *State v. Smith*, 75 N.D. 29, 25 N.W.2d 270 (1946); *State v. Thomson*, 76 N.D. 125, 34 N.W.2d 80 (1948); *State v. Simpson*, 78 N.D. 360, 49 N.W.2d 777 (1951); *State v. Simpson*, 78 N.D. 571, 50 N.W.2d 661 (1951); *State v. Nierenberg*, 80 N.W.2d 104 (N.D.1956). This is not surprising, considering that the federal constitutional double jeopardy protection did not apply to the states until 1969. *See Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969); *see also State v. Barnes*, 29 N.D. 164, 150 N.W. 557 (1915) [federal double jeopardy provisions have no application in state courts]. A representative pre-*Allesi* double jeopardy case is *State v. Taylor*, 70 N.D. 201,

293 N.W. 219 (1940), in which future Justice Alvin Strutz and future Judge Eugene Burdick represented the state. In *Taylor*, the court analyzed whether a defendant's guilty plea to carrying a concealed weapon barred a later prosecution for kidnapping. *Id.* at 210–12, 293 N.W. 219. The court cited a prior North Dakota case, an Ohio case, a United States Supreme Court case and a legal encyclopedia in determining that the defendant was properly tried for two offenses arising from the same transaction. *Id.* The *Taylor* case, and the history of our double jeopardy jurisprudence, show that this court, until *Benton* and *Allesi*, independently and thoughtfully applied its interpretation of North Dakota's enunciated statutory policy and historic populism in determining the extent of double jeopardy protection available in North Dakota.

Furthermore, this court's actions since *Benton* and *Allesi* show that we should recognize, at least, that our constitution's Double Jeopardy Clause deserves to be interpreted independently. In *Altevogt*, 353 N.W.2d at 765, we determined that it was necessary to independently determine the jury trial rights of our citizens under our constitution because our constitution grants greater jury trial rights than the federal constitution. This court long ago stated that "[t]he right not to be put in jeopardy the second time for the same offense is as important and should be as scrupulously regarded as the right of trial by jury." *Panchuk*, 53 N.D. at 676, 207 N.W. 991. Because the right to a jury trial and the right to protection from double jeopardy are fundamental rights of equal dignity in North Dakota, we should overrule *Allesi* and independently interpret our constitution's Double Jeopardy Clause as we do our constitution's guarantee of the right to a jury trial.

Other state constitutions have been interpreted to give those states' citizens increased double jeopardy protections.[2] *See* Friesen at ¶ 12.07. Several states (including our neighbor Montana) have rejected the federal rule first enunciated in *Blockburger v. United*

*States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), that two offenses are not the same for double jeopardy purposes if one requires proof of a fact that the other does not. Instead, these states apply the "same transaction" test advanced by Justice Brennan in *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) (Brennan, J., concurring), and *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), *overruled by United States v. Dixon*, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993). *See Bush v. Commonwealth*, 839 S.W.2d 550 (Ky.1992); *People v. White*, 390 Mich. 245, 212 N.W.2d 222 (1973); *State v. Hernandez*, 213 Mont. 221, 689 P.2d 1261 (1984); *State v. Brown*, 262 Or. 442, 497 P.2d 1191 (1972); *Amrein v. State*, 836 P.2d 862 (Wyo.1992).

Other states have rejected the federal "dual sovereignty" theory that allows consecutive prosecutions by different sovereigns based on the same act. *See People v. Cooper*, 398 Mich. 450, 247 N.W.2d 866 (1976); *State v. Dahms*, 252 Mont. 1, 825 P.2d 1214 (1992); *State v. Hogg*, 118 N.H. 262, 385 A.2d 844 (1978); *Commonwealth v. Mills*, 447 Pa. 163, 286 A.2d 638 (1971). Still other states have developed their own unique rules about when double jeopardy will bar a second prosecution. *See Pool v. Superior Court*, 139 Ariz. 98, 677 P.2d 261 (1984) [retrial barred when mistrial granted based on egregious prosecutorial misconduct]; *People v. Serravo*, 823 P.2d 128 (Colo.1992) [retrial barred whenever defendant obtains a favorable result at first trial]; *State v. Estrada*, 71 Haw. 260, 787 P.2d 692 (1990) [second prosecution barred when nolle prosequi on first indictment granted without notice and hearing to defendant]; *Kennedy*, 666 P.2d at 1316 [retrial barred when improper official conduct so prejudicial to defendant that it cannot be cured but by mistrial]; *Commonwealth v. Smith*, 532 Pa. 177, 615 A.2d 321 (1992) [retrial barred when defendant denied fair trial due to prosecutorial misconduct].

---

2. While none of the highest state appellate courts have yet held a criminal prosecution following an administrative license suspension to be double jeopardy under their state constitutions, the Ha-

waii Supreme Court has left a door open on the issue. *See State v. Toyomura*, 80 Hawai'i 8, 904 P.2d 893 (1995).

But whether or not our state constitution is read to provide more or the same protection as the federal constitution, the issue is really one of federalism and the states' equal and active partnership in our federal polity. As the Oregon Supreme Court explained:

"A state's view of its own guarantee may indeed be less stringent, in which case the state remains bound to whatever is the contemporary federal rule. Or it may be the same as the federal rule at the time of the state court's decision, which of course does not prevent that the state's guarantee will again differ when the United States Supreme Court revises its interpretation of the federal counterpart. The point is not that a state's constitutional guarantees are more or less protective in particular applications, but that they were meant to be and remain genuine guarantees against misuse of the state's governmental powers, truly independent of the rising and falling tides of federal case law both in method and in specifics. State courts cannot abdicate their responsibility for these independent guarantees, at least not unless the people of the state themselves choose to abandon them and entrust their rights entirely to federal law." *Kennedy,* 666 P.2d at 1323.

It is not a "revolutionary idea" that we should interpret our constitution independently, "but one that is founded in the most fundamental principles of federalism and in the history of state constitutions." *State v. Caraher,* 293 Or. 741, 653 P.2d 942, 950 n. 13 (1982). The history of our state constitution shows that the framers had an intention to grant an array of basic rights broader than that guaranteed by the federal constitution. *See* Lynn Boughey, *An Introduction to North Dakota Constitutional Law: Contents and Methods of Interpretation,* 63 N.D.L.Rev. 157 (1987). Over sixty years ago, in *State v. Norton,* 64 N.D. 675, 686, 255 N.W. 787 (1934), this court said:

"The [North Dakota] constitution is a living, breathing, vital instrument, adaptable to the needs of the day, and was so intended by the people when adopted. It was not a hard and fast piece of legislation, but a declaration of principles of government for the protection and guidance of those

upon whose shoulders the government rested."

If we deny our state constitution a life of its own, it becomes a mere appendage to the federal constitution. Justice Brennan instructs that:

"[S]tate courts cannot rest when they have afforded their citizens the full protections of the federal Constitution. State constitutions too are a font of individual liberties, their protections often extending beyond those required by the Supreme Court's interpretation of federal law. The legal revolution which has brought federal law to the fore must not be allowed to inhibit the independent protective force of state law—for without it, the full realization of our liberties cannot be guaranteed." Hon. William J. Brennan, Jr., *State Constitutions and the Protection of Individual Rights,* 90 Harv.L.Rev. 489, 491 (1977).

It is contrary to the ideals of federalism to adopt a "me too" approach to interpreting any of the provisions of our state constitution that protect the fundamental rights and individual liberties of our citizens. It is this court's responsibility to be the ultimate interpreter of our state constitution. *State ex rel. Sanstead v. Freed,* 251 N.W.2d 898 (N.D. 1977). The federal constitution provides the floor, not the ceiling, for protecting individual rights. Hon. William J. Brennan, Jr., *The Bill of Rights and the States: The Revival of State Constitutions as Guardians of Individual Rights,* 61 N.Y.U.L.Rev. 535 (1986). Because we can intelligently interpret our own constitution, guided by our history, and informed by, but not constrained by, federal analogy (except as a bottom line), we should overrule *Allesi* now.

Under an independent interpretation of Article I, section 12 of our constitution, a driving under the influence prosecution in the wake of an administrative penalty proceeding is unconstitutional because it exposes the accused to the multiple infliction of punishment for the same offense.

If there is some doubt that the penalties imposed by the Department of Transportation upon a person caught driving under the influence amount to punishment, I believe we should resolve that doubt in favor of guarding against even the specter of double pun-

ishment. Looking at it realistically, what does a driver's license suspension mean? Obviously, it bars a person from driving. In North Dakota, residents of our eastern cities can ride buses in town. But similar intracity mass transit is not a reality in the rest of North Dakota. Access to intercity mass transit (planes, trains and buses) is also limited, and these services can be expensive and inconvenient. Automobiles are the primary form of transportation in this state, and depriving a citizen of access to this form of transportation based on the citizen's bad behavior is punishment as we all know, use and understand that term.

Holders of drivers' licenses possess important property rights in those licenses. *Kobilansky v. Liffrig,* 358 N.W.2d 781 (N.D.1984). A driver's license holder cannot be deprived of this property right without due process of law. *North Dakota Dept. of Transp. v. Du-Paul,* 487 N.W.2d 593 (N.D.1992). Taking away an important right from a person because this person has done something worthy of sanction is punishment in itself.

Nor is suspension of driving privileges the only punishment a person who loses a driver's license faces. If the person wants to obtain a license again after the suspension period ends, the person must pay a reinstatement fee. NDCC § 39–06–35. A driver whose license is suspended for driving under the influence is punished by having to pay a fee twice that paid by drivers whose licenses are suspended for other reasons. *See id.* So, a driver whose license was suspended due to driving under the influence is not only administratively punished with a suspension, but also faces a fine in the form of the reinstatement fee. The cumulative purpose and effect of these administrative penalties is to punish the drunk driver.

Any doubt I had over whether the administrative sanctions are punitive is dispelled by the legislative history of the relevant statutes. It makes clear the legislature intended the administrative sanctions imposed on drunk drivers to be punishment. The preamble to the bill which implemented the administrative suspension provision states that the bill creates and enacts new provisions "relating to penalty and punishment for operating a motor vehicle while under the influence." 1983 N.D.Laws ch. 415. Repre-

sentative Pomeroy, one of the bill's sponsors, warned that the license suspension should be long "enough to learn the lesson." S.B. 2373, Conference Committee Minutes, March 30, 1983. John Walstad of the Legislative Council explained that the section of the bill relating to license suspension imposed an "administrative penalty." S.B. 2373, Conference Committee Minutes, April 7, 1983. Representative Conmy, in typical humorous form, noted that the motto of the conference committee on the bill should be "[d]runks are not people, much less citizens." *Id.* The legislature clearly knew that it was imposing a penalty—punishment—when it passed the bill that made administrative license suspension for drunk driving part of our law. It told us its purpose unequivocally and we should not, indeed, cannot, disregard that information when we apply the Double Jeopardy Clause of our constitution.

While imposing administrative penalties on people caught driving under the influence may be an efficient way to achieve a safer society, the imposition of the penalty of license suspension is a punishment to the individual driver affected, regardless of the remedial goals of the action. It is the individual that our Declaration of Rights and our constitutional double jeopardy provision were designed to protect. Article I, section 12 states that "[n]o *person* shall be twice put in jeopardy for the same offense." This prohibition stands even when it might be good for society to subject the person to prosecution after prosecution to penalize the person for bad acts. Under our state constitution, a person is clearly "twice put in jeopardy" when a criminal prosecution follows administrative punishment in the form of a license suspension because the person is exposed to dual punishment for the same offense.

Therefore, I dissent because I would hold that it is a violation of the Double Jeopardy Clause of the North Dakota Constitution to prosecute a person for driving under the influence when the person already has been punished for driving under the influence.